**MALONE FREIGHT LINES, Inc.,**
**Plaintiff,**

v.

**UNITED STATES of America and Inter-**
**state Commerce Commission,**
**Defendants.**

**Civ. A. No. 8220.**

United States District Court
N. D. Alabama, S. D.

Feb. 29, 1956.

Maurice F. Bishop, Birmingham, Ala., for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen.; James E. Kilday and Charles R. Esherick, Attys., Dept. of Justice, Washington, D. C., and Atley A. Kitchings, Acting U. S. Atty., Birmingham, Ala., for the United States.

Robert W. Ginnane, Gen. Counsel, and Leo H. Pou, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

Before RIVES, Circuit Judge, LYNNE, Chief Judge, and GROOMS, District Judges.

GROOMS, District Judge.

The jurisdiction of this court is invoked and venue laid under Title 28, Sections 1336, 2284, 2321–2325, inclusive, of the United States Code.

This action seeks to have the Court set aside, vacate and permanently enjoin the enforcement of an order of the Interstate Commerce Commission (hereinafter referred to as the "Commission") designated as "Investigation and Suspension Docket No. M–5922, Drugs from Greensboro, N. C., to Memphis, Tenn.," and embraced in those certain proceedings entitled "Investigation and Suspension Docket No. 6215, Drugs or Medicines from Greensboro, N. C., to the South." This order requires plaintiff to establish a rate of $1.02 per 100 pounds, minimum 30,000 pounds, for the transportation of candy cough drops or tablets, or articles described under the heading of drugs, medicines, and toilet preparations in the governing carrier classification (hereinafter referred to as the "involved com-

modities"), while approving a rate of $1 per 100 pounds on such commodities for transportation by rail carriers.

The case was submitted to the Court upon the certified transcript of the proceedings before the Commission, the pleadings in this cause, motion of Southern Railway Company for leave to intervene, which motion was granted in open court, oral arguments and briefs.

Prior to June 5, 1953, the rail rate on the involved commodities from Greensboro, N. C., to Memphis, Tenn., was $1.3340 per 100 pounds, while the rate of the plaintiff was $1.04 per 100 pounds, with a minimum of 30,000 pounds. On October 22, 1953, the Commission permitted a reduction in the rail rate to $1.02 per 100 pounds. Motor carriers, other than the plaintiff, were permitted to establish a like rate. Pursuant to tariff schedules filed with the Commission, to become effective June 17, 1954, the rail carriers proposed to reduce carload rates on the involved commodities between Greensboro and Memphis from $1.02 to $1. Plaintiff and the Southern Motor Carriers Rate Conference, Inc., protested the reduction and the schedules were suspended. To meet the reduction last referred to, plaintiff by application filed, to become effective April 30, 1954, proposed to reduce its rate on the involved commodities between Greensboro and Memphis from $1.04 to $1. The Georgia Railroad and Banking Company, Southern Railway Company, the Southern Freight Association, and the Southern Motor Carriers Rate Conference protested the plaintiff's proposed rates and its schedule was suspended.

The rail rates of $1 per 100 pounds were made the subject of a joint recommended report and order of Examiner William J. Sweeney, dated February 7, 1955. Examiner Sweeney found that neither the proposed rate of the rail carriers nor of the plaintiff was shown to be just and reasonable. He further found that there was a failure of proof that the rates from Greensboro must be lower in any amount than the rates applicable to motor carriers. Although no exception was filed to the report proposed by the Examiner, Division 3 of the Commission differed with the Examiner's recommendations and found that the rail rates were just and reasonable, but that the plaintiff's rates were unjust and unreasonable. The conclusions of the Commission are as follows:

"It is clear that the rail service on this traffic is of less value to the shipper than the motor service, and that if the rail carriers are to share in the traffic their rates will have to be somewhat lower than those by motor. The proposed rail rates appear to be no lower than necessary to meet the competition, and will not have a disruptive effect upon the rate structure.

"To the contrary, the $1 rate maintained by Malone from Greensboro to Memphis appears to be lower than necessary to allow Malone to obtain its fair share of the traffic in competition with the rail and other motor carriers, and if continued in effect, could be expected to result in further rate reductions by other carriers, thus causing an unnecessary disruption of the rate structure.

"We find that the rates proposed in the title proceeding are just and reasonable, and that the present rate of $1 in the embraced proceeding from Greensboro to Memphis is unjust and unreasonable to the extent that it is less than $1.02, minimum 30,000 pounds."

Plaintiff's petition for reconsideration by the Commission as a whole was denied.

Vicks Chemical Company has two plants at Greensboro, N. C. One plant is known as the Wendover Avenue plant, from which cough drops and tablets and cough syrup are shipped. This plant has a railroad siding. The other plant is known as the Milton Street plant, from which Vapo-Rub and Va-tro-nol are shipped. This plant is without a railroad siding. The distance between the two

plants is approximately 2½ miles. To ship mixed shipments of the involved commodities by rail, the shipper uses its own trucks to haul the articles from the Milton Street plant to the Wendover Avenue plant. When mixed shipments are to be made from the Milton Street plant, the shipper likewise uses its trucks to transport the products of its Wendover Avenue plant to the Milton Street plant. If the shipper does not use its own equipment in transporting mixed truckloads of its commodities from one plant to the other, motor carriers, including plaintiff, a participant in the conference tariffs, make a charge of 8.5 cents per 100 pounds, $6.06 minimum, for the service, based on the amount of freight picked up at the second plant of the shipper.

The evidence reveals that the proposed rail rates on candy cough drops and tablets and cough syrup would yield minimum car-mile revenues of 48.5 cents from Greensboro to Memphis. Shipments not containing candy cough drops or tablets would yield minimum car-mile revenues of 40.4 cents to the same destination. The average operating expense per loaded car-mile for Class I rail carriers in the southern region during the year 1953 was 29.4 cents and the average expense for the Southern Railway Company, the line most likely to carry the involved commodities, amounted to 29.526 cents. The plaintiff's proposed rate would result in revenues of 42.4 cents per truck-mile. The average operating expense for the plaintiff is well under 30 cents per truck-mile.

The evidence is undisputed that the plaintiff, in handling this traffic, has always loaded mixed truckloads only at the Milton Street plant. The evidence also established the fact that the shipper would have the same expense in using its trucks to haul the involved commodities from its Milton Street plant to its Wendover Avenue plant in preparing a mixed shipment for transportation by truck as it does in preparing a mixed shipment for rail transportation; and, as shown above, if the shipper calls up-on the plaintiff to pick up mixed shipments from both plants, the plaintiff is required to make an additional charge on the amount of freight picked up at the second plant of the shipper.

The limits of judicial review of the Commission's orders are well marked. If an order is based upon adequate findings, which, in turn, are supported by substantial evidence, it may not be set aside on review, even though the court may not agree with the Commission's conclusions, or may consider them against the weight of the evidence. I. C. C. v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 56 L.Ed. 308; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286, 54 S.Ct. 692, 78 L.Ed. 1260. However, under the decisions, and the Administrative Procedure Act, 5 U.S.C.A. § 1009(e), a reviewing court is required to hold unlawful and set aside the Commission's action, findings and conclusions, found to be arbitrary, or unsupported by substantial evidence.

Part II of the Interstate Commerce Act, as amended, and specifically Section 316(d), Title 49 U.S.C.A., provides that all charges made for any services rendered by any common carrier by motor vehicle engaged in interstate commerce in the transportation of property "shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof, is prohibited and declared to be unlawful." Section 316(i) of said Title provides in material part as follows:

"In the exercise of its power to prescribe just and reasonable rates, fares, and charges for the transportation of * * * property by common carriers by motor vehicle * * *, *the Commission shall give due consideration,* among other factors, *to the inherent advantages of transportation by such carriers;* to the effect of rates upon the movement of traffic by the carrier or carriers for which the rates are prescribed; to the need, in the public interest, of adequate and ef-

ficient transportation service by such carriers *at the lowest cost consistent with the furnishing of such service;* and to the need of revenues sufficient to enable such carriers, under honest, economical, and efficient management, to provide such service." (Emphasis supplied.)

While there is no substantial evidence of the effect of the rates upon rail and motor carriers which could overcome due consideration of the inherent advantage or of the other factors mentioned in Section 316(i), it is well to observe that "inherent advantage" is only one of the factors to be considered.

In I. & S. Docket M-4664, decided on February 10, 1955, where the rail carriers contended that the motor carriers should be required to compete in the transportation of alcoholic liquors to and from Peoria, Illinois, on the basis of higher rates because they offered a superior service, the Commission rejected such contention, saying:

"The protestants also refer to certain inherent advantages in motor carrier service as reasons why the motor carriers should be required to maintain higher rates than the railroads. This argument assumes that inherent advantages of one transportation agency over another should be nullified by adding extra amounts to the rates of the carriers having inherent advantages. Such an assumption is completely contrary to the rate-making sections of the Interstate Commerce Act and the National Transportation Policy. See I. C. C. v. Mehling, 330 U.S. 567 [67 S.Ct. 894, 91 L.Ed. 1102]."

Conclusions of like import were reached in I. & S. Docket No. M-5056, involving rates on paper wrappers from St. Louis, Mo., to Louisville, Ky., and in Dean v. Herrin Transportation Co., 53 M.C.C. 55, where motor carrier commodity rates on flavoring syrup were approved. In each of the three cases the Commission stated that findings to the contrary would contravene the National Transportation Policy.

The Commission in its Report notes that the pattern followed in loading rail cars with products from both the Wendover Avenue and the Milton Street plants are similar to that used in loading truckload shipments with articles from both plants, the same plant-to-plant service being necessary; that in those instances where the shipper has not used its own equipment, plaintiff is required to make an additional charge for the services, based on the amount of freight picked up at the second plant of the shipper; and that Malone has always loaded mixed truckloads only at the Milton Street plant. The Commission's findings ignore the significance of these facts and the fact that the shipper would have the same expense in using its trucks to transport the involved commodities from its Milton Street plant to its Wendover Avenue plant in preparing mixed shipments for transportation by truck as by rail. Its conclusion that the rail service on the involved traffic is of less value to the shipper than the motor service is without substantial evidential support.

The Commission found that the proposed rate of $1 from Greensboro to Memphis for the rail carriers is just and reasonable. It found that the $1 rate for the plaintiff is unjust and unreasonable. The latter finding is not only not sustained by the evidence but is contrary to the evidence. There is no basis in the evidence for the application of different rates. The evidence sustains the plaintiff's proposed $1 rate as just, reasonable and compensatory. The conclusions of the Commission to the contrary are not supported by substantial evidence, and from a review of the whole evidence, the Court concludes that a judgment should be entered declaring that the findings in "Investigation and Suspension Docket No. M-5922, Drugs from Greensboro, N. C., to Memphis, Tenn.," be set aside as unlawful, void and inconsistent with the National Transportation Policy, and that enforcement thereof be permanently enjoined, and it will be so ordered.