**MALONE FREIGHT LINES, INC.,**
Plaintiff,

v.

**UNITED STATES of America and Interstate Commerce Commission,**
Defendants.

**Civ. A. No. 9996.**

United States District Court
N. D. Alabama, S. D.

April 5, 1962.

Edward M. Reidy, Washington, D. C. and J. Haden Alldredge, Montgomery, Ala., for plaintiff.

Lee Loevinger, Asst. Atty. Gen., Richard A. Solomon, Attorney, Dept. of Justice, Washington, D. C., and Macon L. Weaver, U. S. Atty., and Raymond P. Mims, Asst. U. S. Atty., Birmingham, Ala., for the United States.

Robert W. Ginnane, Gen. Counsel, and Fritz R. Kahn, Atty., Interstate Commerce Commission, Washington, D. C., for the Interstate Commerce Commission.

Crimm & Postell, Atlanta, Ga., for intervening defendant Southern Motor Carriers Rate Conference, Inc.

Robert R. Artz, Philadelphia, Pa., for intervening defendant, Pennsylvania Railroad Co.

Before RIVES, Circuit Judge, and LYNNE and GROOMS, District Judges.

LYNNE, Chief Judge.

Plaintiff, Malone Freight Lines, Inc., brought this action under 28 U.S.C.A. §§ 1336, 1337, 1398, 2284 and 2321–2325, Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9), and Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, to enjoin, annul and set aside the report and orders of the Interstate Commerce Commission, entered May 1, 1961, and August 14, 1961, in Investigation and Suspension Docket No. M–13780, Floor Coverings or Related Articles From East to South, in which the Commission found that the plaintiff's proposed reduced motor carrier rates were not shown to be just and reasonable and ordered their cancellation.

By schedules filed to become effective on August 19, 1960, the plaintiff, a common carrier by motor vehicles subject to the provisions of the Interstate Commerce Act, 49 U.S.C.A. § 301 et seq., proposed the reduction of its commodity rates on floor coverings and related articles from origins in Delaware, New Jersey, New York and Pennsylvania to des-

tinations in Alabama, Arkansas, Georgia, Louisiana, Mississippi, and Tennessee. The proposed rates were protested on August 4, 1960, by intervenor, the Southern Motor Carriers Rate Conference, Inc.,[1] a nonprofit corporation engaged primarily in the publication of rates for its member carriers under agreements approved by the Commission pursuant to 49 U.S.C.A. § 5b. Southern Motor Carriers—Agreement, 297 I.C.C. 603 (1956).

The Commission, Board of Suspension, on August 16, 1960, ordered the operation of the schedules to be suspended until March 19, 1961 (when they became effective), and entered upon an investigation into the lawfulness of the rates. The plaintiff, on September 6, 1960, petitioned for vacation of the order of suspension, and replies to its petition were filed by the Conference and intervenor, The Pennsylvania Railroad Company.[2] The Reading Company and the Western Maryland Railway, upon their joint application, were permitted, on September 27, 1960, to intervene in the proceeding as additional parties protestants. Plaintiff's petition was denied by order of the Commission, Division 2, entered October 26, 1960.

Under the modified procedure ordered by the Commission on August 24, 1960, for the disposition of the proceeding, the plaintiff, on November 21, 1960, filed its opening statement of facts and arguments and supporting exhibits. On December 23, 1960, the Conference and the railroads filed their separate statements which were met by plaintiff's motion to strike or reject. Plaintiff filed its reply statement on January 9, 1961. The Conference and the railroads filed separate replies to the plaintiff's motions, and the Conference, on January 19, 1961, moved the Commission to strike portions of plaintiff's reply statement, to which motion plaintiff replied on February 1, 1961. On May 1, 1961, the Commission, Division 2, entered its report and order, disposing of the pending motions, finding the proposed new rates *not shown to be just and reasonable* and ordering their cancellation. Floor Coverings or Related Articles From East to South, 313 I.C.C. 530 (1961).

Plaintiff, on June 5, 1961, petitioned the reconsideration of the Commission's report and order, and the Conference and the railroads filed separate replies. The Commission, Division 2, "acting as an appellate division," on August 14, 1961, denied plaintiff's petition for reconsideration and established September 28, 1961, as the effective date for the order requiring the cancellation of the proposed reduced rates. On September 20, 1961, the Commission, Acting Chairman Murphy, following the institution of this action, ordered the effective date postponed until further order of the Commission.

Probing questions from the bench, on oral argument, raised doubt as to jurisdiction which must first be laid to rest. Precisely, our disagreement relates to the proper construction to be placed upon the provisions of 49 U.S.C.A. § 17(9). Were we to conclude that the Congress intended thereby to constrict the general jurisdiction granted to district courts by 28 U.S.C.A. § 1336 by precluding judicial review of an order of a division until there has been reconsideration "by the Commission or an appellate division", we would be discomfited by the mutation of labels whereby Division 2 purported to transform itself into an "appellate division."

But this is not a simple exercise in rhetoric. "We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole act, and that in fulfilling our responsibility in interpreting legislation, 'we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the

---

1. The Conference, permitted to intervene herein as a party defendant, filed a brief and participated in the oral argument.

2. Pennsylvania, permitted to intervene herein as a party defendant, filed a brief and participated in the oral argument.

whole law, and to its object and policy'." [3] Richards v. United States, 82 S.Ct. 585 (1962).

■ Turning to an analysis of Section 17 of the Interstate Commerce Act, all paragraphs of which were contemporaneously enacted (September 18, 1940, c. 722, Title 1, § 12, 54 Stat. 913) and of Section 1.101(a) (1) (2) and (3) of the General Rules of Practice before the Interstate Commerce Commission,[4] we are impressed that Malone has done everything within its power to exhaust its administrative remedy. The United States and the Commission in their joint answer and the intervening defendants in their separate answers have conceded that it has done so. Therefore, we are of the opinion that this suit is not premature and that the issues raised by the pleadings are justiciable.

No argument would seem to be required to support the proposition that the contemporaneously enacted paragraphs of Section 17 should be construed *in pari materia*. Paraphrasing the pertinent paragraphs of such section produces the following pattern:

(1) The Commission is authorized to create divisions. It *may designate one or more* of its divisions as appellate divisions.[5]

(2) The Commission is authorized by order to direct that any of its work, business or functions, except functions vested in the Commission under this section, be assigned or referred to *any* division.

---

3. While we agree that Section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, does not operate to broaden the jurisdiction of the court, we believe that its provisions have relevance in assessing the function of Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9) in the far-ranging design of judicial review of final administrative orders.

4. Rule—prior to Feb. 1, 1961.
   Section 1.101 *Petitions for rehearing, reargument, or reconsideration*—(a) *In general*. A petition seeking any change in a decision, order, or requirement of the Commission should specify whether the prayer is for reconsideration, reargument, rehearing, further hearing, modification of effective date, vacation, suspension, or otherwise.
   Rule—as amended effective Feb. 1, 1961.
   It is ordered that paragraph (a) of section 1.101 be amended to read as follows:
   (a) *In general*. (1) A petition seeking any change in a decision, order or requirement of the Commission should specify whether the prayer is for reconsideration, reargument, rehearing, further hearing, modification of effective date, vacation, suspension, or otherwise.
   (2) *Administrative finality of division decisions*. All decisions, orders, or requirements of a division of the Commission in any proceeding shall be considered administratively final, except those involving issues of general transportation importance, those wherein the division reverses, changes, or modifies a prior decision by a hearing officer, and

those wherein the initial decision is made by a division.
   (3) *Limitations on petitions for review of division decisions*. Pursuant to authority granted in section 17(6) of the Interstate Commerce Act, the right to apply to the entire Commission for rehearing, reargument, or reconsideration of a decision, order, or requirement of a division of the Commission in any proceeding shall be limited and restricted to those proceedings in which prior to, or at the time of issuance of a division's decision, the entire Commission, on its own motion determines and announces that an issue of general transportation importance is involved. In proceedings in which no such announcement has been made, but in which a division reverses, changes, or modifies a prior decision by a hearing officer or where the initial decision is made by a division, a petition to the same division for rehearing, reargument, or reconsideration of its decision will be permitted and will be considered and disposed of by such division in an appellate capacity and with administrative finality.

5. In Levers v. Anderson, 326 U.S. 219, 223, 66 S.Ct. 72, 90 L.Ed. 26 (1945), the regulations involved provided that the supervisor "may hear the application" for a rehearing. The court observed: "No other language of the regulations, and no satisfactory proof of publicly established practice under them, persuades us that the 'may' means must * * *."

(3) The Commission shall conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice, and make or amend such general rules or orders as may be a requisite for the order and regulation of proceedings before it.

(4) Except as otherwise provided in this section, any order, decision, or requirement of a division, an individual commissioner, or a board, with respect to any matter so assigned or referred, shall have the same force and effect, and may be made and evidenced in the same manner as if made or taken by the Commission.

(5) When a matter is referred to an individual commissioner or a board, the recommended order thereof, in the absence of exceptions thereto, shall become the order of the Commission unless stayed by the Commission or a duly designated division. Where exceptions are filed, the Commission or a duly designated division must reconsider the matter either upon the same record or after further hearing.[6]

(6) This is a critical paragraph. It provides that when any order has been entered, which is deemed to be the order of the Commission, any party thereto, subject to such limitations as may be imposed by the Commission may make application for rehearing, reargument or reconsideration, which application shall be governed by such general rules as the Commission may establish. If the order was entered by the Commission, the Commission must act on the application; if entered by a division, an individual commissioner, or a board, the Commission must act on the application or refer it to an appropriate appellate division. The Commission is empowered to make rules or orders confining the *right to apply* [7] for rehearing, reargument or reconsideration where the order was entered by the Commission, or a division, to proceedings involving issues of general transportation importance. But the right to so apply may not be thus confined even though no issue of general transportation importance is involved where the matter was referred to an individual or a board under the provisions of paragraph (2), supra. In that instance the application for a rehearing must be referred to an appropriate appellate division.[8]

(7) The Commission or appellate division, at the rehearing, is empowered to reverse, change or modify an order of a division, an individual commissioner, or a board.

(8) Where the order of a division, individual commissioner, or a board has not become effective when application for rehearing is made, the order must be stayed pending disposition by the Commission or appellate division. However, in the absence of a special order of the

---

6. By Act of September 14, 1961, Pub.L. 87–247, 75 Stat. 517, this paragraph was amended to authorize the Commission to delegate to employee boards duties of the same character as those performed by designated divisions.

7. It would seem that the Commission is plainly invested with authority to provide by rule or order that no affected party has any right to apply for rehearing, reargument or consideration, except in those proceedings involving issues of general transportation importance and except where the matter was referred to an individual or a board under the provisions of paragraph (2), supra.

8. An example of the operation of the "notwithstanding the foregoing provisions" of paragraph (6) may be found in Bowen Transports v. United States, 116 F.Supp. 115 (D.C.E.D.Ill.1953). There plaintiff carrier had applied for temporary authority for service. The Commission assigned the matter to a single commissioner for action; he granted such authority. An intervening competing carrier filed a petition for reconsideration and revocation of such order. Division 5, which had been designated as an appellate division in such cases (17 Fed.Reg. 5356—June 12, 1952) reconsidered and reversed the initial order issued by the single commissioner.

Commission, the persons affected are required to obey the order complained of.[9]

(9) This paragraph, we believe, does not speak in terms of jurisdiction but is designed to require exhaustion of the administrative remedies provided by this section and the rules of procedure with reference to applications for rehearing, which the Commission was expressly authorized to adopt, before resorting to the courts.

Paragraphs (10), (11), and (12) are impertinent.

The foregoing analysis of Section 17 satisfies us that the administrative process had come to an end before the complaint was filed herein; that the Commission had clothed the order complained of with finality by its amended rules effective February 1, 1961, and that the Commission did not exceed its statutory authority in adopting the amended rules.

In a recent discussion of these amended rules, an attorney for the Atchison, Topeka and Santa Fe Railway Company expressed a similar opinion in the following language:

"I think there is little doubt that the Commission's recent changes in its own review procedures are within its statutory powers. Section 17 of the Interstate Commerce Act is unusual among Federal Administrative statutes because of the wide latitude given the Interstate Commerce Commission in the delegation of its duties to divisions. Furthermore, Section 17(6) specifically authorizes the Commission to place limitations upon its own review procedures. A pertinent extract from Section 17(6) follows:

" ' * * * Rehearing, reargument or reconsideration may be granted if sufficient reason therefor be made to appear; but the Commission may, from time to time, make or amend general rules or orders establishing limitations upon the right to apply for rehearing, reargument, or reconsideration of a decision, order, or requirement of the Commission or of a division so as to confine such right to proceedings, or classes of proceedings, involving issues of general transportation importance * * *.'

* * * * * *

"The courts generally have held, with a few exceptions, that the Commission's own administrative review procedures are matters within the sound discretion of the Commission, and I see no reason to anticipate that the courts will deal harshly with the new amendments." Review of Division Orders in Cases Not Involving Issues of General Transportation Importance, by Harvey Huston, I.C. C. Practitioners' Journal, Vol. XXIX, November 1961, page 197.

Moreover, we are inclined to the opinion that the problem with which this court is wrestling is not that of want of jurisdiction, which may not be cured by consent of the parties and which the court is obliged to notice on its own motion [10] but rather application of the doctrine of exhaustion of administrative remedies by application for reconsideration expressly required by 49 U.S.C.A. § 17(9).

■ That this doctrine, which in reality limits the exercise of jurisdiction when the court clearly has jurisdiction of parties and subject matter, may either be self-imposed by the courts or be expressly provided for by statute may be demonstrated by an inexhaustible cita-

9. This was the situation referred to by Mr. Justice Brandeis in United States v. Abilene & Southern Railway Co., 265 U.S. 274, 44 S.Ct. 565, 68 L.Ed. 1016 (1924), when he observed: "But, in the absence of a stay, the order of a division is operative; and the filing of an application for a rehearing does not relieve the carrier from the duty of observing an order." Thus, if we should dismiss this action, Malone could not legally charge and collect its lower rates.

10. Industrial Addition Ass'n v. Commissioner, 323 U.S. 310, 313, 65 S.Ct. 289, 89 L.Ed. 260 (1945).

tion of authorities. A comprehensive discussion of the subject, "Exhaustion of Remedy" contains the following relevant comments:

"Even though a court may have jurisdiction of the subject matter of a dispute, it may decline to exercise it until administrative remedies have been exhausted. Indeed, to exercise that jurisdiction would be an abuse of discretion. The desire to avoid interference with administrative regulations unless it is certain that they will not be modified to satisfy the complainant, and the desire for expert determination insofar as possible, have led to the doctrine that the suit is premature and the issue nonjusticiable so long as the possibility of administrative relief lies unexplored.

\* \* \* \* \* \*

"The question arises as to when the administrative remedy has been pursued far enough \* \* \* usually the courts do not require application to the commission for a rehearing before suit may be maintained \* \* \*. (But if statutes expressly require a petition for rehearing before a cause of action arises from a commission order, the courts will give full effect thereto)." 51 Harv.L.Rev. 1261, 1262 (1938).

The Supreme Court of the United States has stated the rule of self-imposed restraint as follows:

" \* \* \* The long settled rule of judicial administration [is] that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."

Myers v. Bethlehem Corp., 303 U.S. 41, 50, 58 S.Ct. 459, 82 L.Ed. 638 (1938). See also Natural Gas Pipeline Company of America v. Slattery, 302 U.S. 300, 311, 58 S.Ct. 199, 82 L.Ed. 276 (1957), and Porter v. Investors Syndicate, 286 U.S. 461, 52 S.Ct. 617, 76 L.Ed. 1226 (1932).

The split of authority as to what constitutes the exhaustion of an available administrative remedy is fairly stated as follows:

"The principal uncertainty as to what constitutes the exhaustion of an available administrative remedy arises from the question whether a party aggrieved by an administrative determination on the merits is required to apply, prior to resorting to the courts, for an administrative rehearing to the same administrative agency which has made the determination. Where the enabling statute, although authorizing an administrative agency to grant a rehearing, does not require an application for rehearing as a condition precedent to judicial relief, the authorities are divided \* \* \*. Rate making and price fixing are usually classified as legislative in nature, although involving a procedure which is at least quasi-judicial, and it is in regard to cases involving rate or price determinations that the principal split of authority exists. Most of these cases hold that failure to apply for a rehearing does not preclude resort to the courts, particularly where the grant of the rehearing is entirely within the discretion of the Commission \* \* \*."

42 Am.Jur. § 202, Public Administrative Law, pp. 591, 592.

Grouping together decisional rules and statutory requirements, the Supreme Court of the United States has declared:

"We have recognized in more than a few decisions and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."

United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 36–37, 73 S.Ct. 67, 97

L.Ed. 54 (1952). See also, F. P. C. v. Colorado Interstate Gas Co., 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955).

Both the Federal Power Act [11] and the Natural Gas Act [12] contain the identical provision:

> "*   *   * No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. *   *   *"

It has been held that: "These provisions reflect a studied Congressional policy requiring the complete exhaustion of administrative remedies before resort is had to judicial review. As a means of making such policy effective in respect to proceedings before the Commission relating to rates and schedules, Congress withheld from a court of appeals power to entertain a proceeding to review an order of the Commission unless an application for rehearing of such order was made to the Commission." Pan American Petroleum Corp. v. Federal Power Comm., 268 F.2d 827, 829 (10th Cir. 1959).

The Administrative Procedure Act of June 11, 1946 (5 U.S.C.A. § 1009(c) [13] represents an effort on the part of the Congress to resolve complexities of pre-existing decisional law dealing with the exhaustion problem. The Supreme Court, just the year before, in Levers v. Anderson, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945), gave full consideration to the administrative rehearing problem and found decisive "of administrative finality essential to invocation of judicial review" the lack of assurance in the statute and regulations under considera-

tion that a rehearing would have been granted if applied for.

Turning to the cases which have expressly or impliedly dealt with the problem of administrative finality of Commission orders, we find uncritical references to "jurisdiction."

In Holmes v. United States, 89 F.Supp. 894 (D.C.S.D.N.Y.1949), "none of the plaintiffs applied to the Commission for reconsideration of the order of March 10." Both the United States and the Interstate Commerce Commission, in their respective answers, interposed the defense that the court lacked jurisdiction because "the plaintiffs had failed to exhaust their administrative remedy in accordance with Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9)." The court held: "Since Congress has in explicit terms required a petition for reconsideration to be filed before review in the courts is sought, this court lacks jurisdiction to entertain the present suit."

In Refrigerated Transport, Inc. v. United States, 101 F.Supp. 95 (D.C.N.D. Texas 1951), plaintiff conceded that it had not exhausted the administrative remedy provided by Section 17(9) of the Interstate Commerce Act and contended that it was not obliged to do so. Both the United States and the Interstate Commerce Commission moved to dismiss for lack of jurisdiction. In sustaining the motion to dismiss, without discussing jurisdiction, the court held: "The provision of the Act and of the General Rules of Practice of the Commission, seem to provide ample protection for the rights of the complainant pending final determination by the Commission of a peti-

---

11. 16 U.S.C.A. § 825l.

12. 15 U.S.C.A. § 717r.

13. Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, for any form of reconsideration, or (unless the agency otherwise requires by rule and provides that the action meanwhile shall be inoperative) for an appeal to superior agency authority.

tion to reconsider the order complained of."

In National Water Carriers Ass'n v. United States, 126 F.Supp. 87 (D.C.S.D. N.Y.1954) plaintiff attacked an order of Division 2 of the Commission. They had not petitioned the Commission for reconsideration, rehearing or reargument of such order. Both the United States and the Interstate Commerce Commission, in their respective answers, asserted that: "The plaintiffs have not exhausted their administrative remedies, and consequently the court lacks jurisdiction to give the requested relief." Agreeing, the court stated: "Since the plaintiffs failed to comply with the statutory condition precedent to judicial review of the order of May 28, 1954, this court lacks jurisdiction to annul that order."

In City of Philadelphia v. United States, 197 F.Supp. 832 (D.C.E.D.Pa. 1961), the examiner, on February 17, 1961, served his report and order recommending that the carrier's petition be granted. Plaintiffs then filed exceptions to the examiner's report, to which the carrier replied, and on May 17, 1961, Division 3 of the Commission entered the order under attack, affirming and adopting the examiner's report as its own. Subsequently, on June 10, 1961, the plaintiffs filed a petition for reconsideration of the order which was rejected by the Secretary of the Commission on June 23, 1961. The petition was not rejected on its merits. The rejection was based on a change in the Commission's rules of practice which precluded a consideration of plaintiffs' petition by the full Commission. Thereafter, plaintiffs filed suit.

The Court stated: " * * * There is no doubt but that the Commission has the right to prescribe its rules of practice with an eye to limiting consideration by the full Commission to those matters which are of general transportation importance. But even more pertinent is the fact that nowhere in this record is there even an allegation, much less any evidence, that this matter *is* in fact one of general transportation importance which would have warranted consideration by the full Commission. Therefore, the failure of the full Commission to consider the merits of plaintiffs' petition can in no way have prejudiced the plaintiffs."

In A. B. & C. Motor Transportation Company v. United States, 151 F.Supp. 367, 371, 372 (D.Mass.1956), the court disposed of plaintiffs' contentions that they were denied due process of law because the Commission referred their applications for rehearing, reargument and reconsideration to a division of the Commission, one member of which had been a member of the division which decided the case in the first instance; that such reference was not to an "appropriate" division in violation of 49 U.S.C.A. § 17 (6), and that "at the least the Commission's [reference] constituted an abuse of discretion," as follows:

"The arguments are quite without substance. Motions or petitions for rehearing or reconsideration have time out of mind been addressed without thought of constitutional infirmity to the court or judge which, or who, decided the case in the first instance. We see no reason why applications of the same kind to a Commission cannot be similarly addressed, and *a fortiori,* addressed to a division one member of which had been a member of the division which had decided the case in the first instance."

In summary, this court has jurisdiction of the parties and of the subject matter. Jurisdiction of the parties is not disputed. Title 28 U.S.C.A. § 1336 confers upon the district courts jurisdiction of civil actions with respect to "any order of the Interstate Commerce Commission." [14]

---

14. Of course, "order" means only final orders of the Commission and not interlocutory or procedural orders. Michigan

Pub. Serv. Comm. v. United States, 162 F.Supp. 670 (D.C.W.D.Mich.1958).

In recognition of the consistent holdings of the courts that rehearings before administrative bodies are addressed to their own discretion,[15] the Congress in Section 17(6) of the Act invested the Commission with authority to adopt rules regulating applications for rehearing. Under the rules adopted, effective February 1, 1961, the Commission purported to clothe the order under attack with administrative finality. All parties concede that the administrative process has come to an end. There is not here involved the utter lack of jurisdiction which the court should notice *sua sponte*.[16]

■ We have not overlooked the admissible argument that, since the Commission, by Section 17(6), is authorized to deny the right to apply for rehearing, reargument, or reconsideration in proceedings which do not involve issues of general transportation importance, Section 17(9) operates to forbid judicial review of minor orders, denied administrative review, though final. It seems to us,

however, that if the Congress had intended such a result it would have found simple, clear language to express it. Many orders which might be termed minor by the Commission would undoubtedly be viewed as major by the aggrieved carrier. The trend has been to expand, *not to restrict, review by the courts of final administrative actions*.[17]

■ Proceeding to consider the case on the merits, we find it unnecessary to reiterate our appreciation of the limited scope of judicial review to which the parties are entitled.[18] Of primary concern is plaintiff's contention that the Commission erred in its ultimate conclusion that Malone failed to meet its burden of proving that its proposed reduced rates were just and reasonable, as required by Section 216(g) of the Interstate Commerce Act, 49 U.S.C.A. § 316 (g). Whether rates are just and reasonable within the nebulous statutory standard is a question of fact to be resolved by the Commission after according appropriate weight to evidence offered in

15. United States v. Pierce Auto Lines, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1946); I.C.C. v. Jersey City, 322 U.S. 503, 517, 64 S.Ct. 1129, 88 L.Ed. 1420 (1944); and Shein v. United States, 102 F.Supp. 320 (D.C.N.J.1951).

16. The word, "jurisdiction" has different meanings in different contexts. E.g. Industrial Ass'n v. Commissioner, 323 U.S. 310, 313, 65 S.Ct. 289, 89 L.Ed. 260 (1945); Employers Reinsurance Corp. v. Bryant, 299 U.S. 374, 57 S.Ct. 273, 81 L. Ed. 289 (1937); Acadia Land Co. v. Horuff, 110 F.2d 354 (5th Cir. 1940); and Parker Bros. v. Fagan, 68 F.2d 616, 618 (5th Cir. 1934).

17. In his message of April 11, 1938, to the Congress, President Roosevelt suggested the following amendment to the Interstate Commerce Act (House Document 583, p. 49, 75th Congress, 3d Session):

At present the Commission carries on most of its work through its divisions. Appeals lie from the divisions to the entire Commission. Each of the 11 commissioners must pass upon every petition for reconsideration of the action of a division.

Paragraph (4) of section 17 should be amended so as to authorize a division to

make a final order *subject to review by the courts*. With such an amendment, the Commission could then organize into appropriate divisions, each of which could finally pass upon matters submitted, *subject always to review by the courts*. [Emphasis supplied]

\*        \*        \*        \*        \*

It could be provided that upon a motion of any division the entire Commission could consider whether or not it would pass upon a question which might appear to be of commanding national interest.

18. Floyd & Beasley Transfer Co. v. United States, 185 F.Supp. 390, 394 (N.D. Ala.1960); Alabama Great Southern R. R. Co. v. United States, 162 F.Supp. 614, 617 (N.D.Ala.1958); Malone Freight Lines v. United States, 159 F.Supp. 952, 954 (N.D.Ala.1957); State of Alabama v. United States, 141 F.Supp. 488 (N.D. Ala.1956); Malone Freight Lines v. United States, 143 F.Supp. 913, 915 (N.D.Ala. 1956); American Trucking Associations v. United States, 101 F.Supp. 710, 726 (N.D.Ala.1951), aff'd 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953); Malone Freight Lines v. United States, 107 F. Supp. 946, 949 (N.D.Ala.1952).

their support. Board of Trade of Kansas City, Mo. v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432 (1942); Illinois Central R. R. Co. v. Interstate Commerce Commission, 206 U.S. 441, 27 S.Ct. 700, 51 L.Ed. 1128 (1907); Cin., N. O. & Tex. Pac. Ry. v. Interstate Commerce Commission, 162 U.S. 184, 16 S.Ct. 700, 40 L.Ed. 935 (1896). It seems obvious that rates which are not compensatory are not just and reasonable. Chicago & E. I. R. Co. v. United States, 107 F. Supp. 118 (S.D.Ind., 1952), aff'd Mem. 344 U.S. 917, 73 S.Ct. 346, 97 L.Ed. 707 (1953). Discussing and weighing the evidence, the Commission concluded that Malone had failed to produce facts which would justify a finding that its proposed rates were compensatory.

■ Malone does not own its own tractors but leases them from other persons who also operate the equipment. In attempting to meet its burden of proof, Malone merely showed that it paid the owner-operators 70 percent of the gross revenue per trip, while Malone received 30 percent. No costs were presented whereby the Commission could determine whether the proportion of the gross revenue received by owner-operators is sufficient to represent a compensatory return, despite a previous admonition that the Commission was vitally interested in cost data for representative owner-operator movements.[19]

The Commission found inadequate to support a finding that the proposed rates would be compensatory evidence relating to Malone's system average expenses, comparisons of its rates with those of other motor carriers and railroads on the

same commodities between the same points (without reference to earnings under the compared rates), and total revenue under the proposed rates in excess of revenue under existing rates. As we observed once before, "under the limited review here permitted, it cannot be held that the Commission erred in finding that the plaintiff had not met its burden of proof." Malone Freight Lines v. United States, 159 F.Supp. 952 (N.D.Ala., 1957). Accord: Boston & Maine R. R. v. United States, 153 F.Supp. 952 (D.Mass., 1957); Chicago & E. I. R. Co. v. United States, supra.

■ Asserting procedural errors committed by the Commission to its prejudice, plaintiff insists that the evidence which it offered, in purported rebuttal, relating to the rental rates of an unidentified truck leasing company and the annual earnings of four unidentified owner-operators was improperly stricken. We hold that such evidence was not in rebuttal of any facts appearing in any statements but served merely to aid plaintiff's case in chief after its deficiencies had been pointed out by protestants. Under the Commission's General Rules of Practice [20] it was proper to strike such evidence.

■ Contesting the standing of the Southern Motor Carriers Rate Conference, Inc. to protest the rates in question, plaintiff fashions an ingenious argument. It is urged that the Conference, of which it is a member, operates under an agreement approved by the Commission pursuant to the provisions of Section 5a of the Interstate Commerce Act, that Section 5a provides that the Commission

---

19. Class Rates and Ratings, Malone Freight Lines, Inc., 304 I.C.C. 395, 398.

20. Rule 1.49 of the Commission's General Rules of Practice, 49 C.F.R. § 1.49, provides:

(a) *Generally*. A statement filed under the modified procedure after that procedure has been directed shall state the facts and include the exhibits upon which the party relies. If no answer has been filed pursuant to the waiver provision of

§ 1.46, defendant's statement should admit or deny specifically and in detail each material allegation of the complaint. In addition defendant's statement and complainant's statement in reply shall specify those statements of fact of the opposite party to which exception is taken, and include a statement of the facts constituting the basis for such exception. Complainant's statement of reply shall be confined to rebuttal of the defendant's statement.

may only approve a rate conference agreement where liberty of action is retained by each member of the Conference to file separate rates; that such liberty of action is impossible where the individual carrier is faced with the threat by the Conference to oppose before the Commission any independent rate filed by the carrier; and that, therefore, the participation by the Conference in the administrative proceedings involved herein in opposition to plaintiff's proposed rates in some manner invalidated the Commission's determination that plaintiff's new rates had not been shown to be just and reasonable.

It is difficult to relate this contention to any real issue in this case. Malone is a voluntary member of the Conference. It had "the free and unrestrained right to take independent action" to file its tariff and to prove that its proposed rates were just and reasonable independently of the agreement. We do not pass collaterally upon the legality of the Southern Motor Carriers Rate Agreement [21] for the simple reason that its invalidity, if assumed, would not aid plaintiff in discharging its burden of proof. Moreover, The Pennsylvania Railroad Company was admittedly a proper party and it raised the same objections to the sufficiency of the evidence before the Commission as did the Conference.

What we have written in exploration of our jurisdiction adequately answers plaintiff's contention that the Commission committed error of law and denied to it a fair hearing in violation of the due process clause by referring its petition for review of the order of Division 2 to the same division acting in an appellate capacity.

It is, therefore, CONSIDERED, ORDERED and ADJUDGED by the Court that the complaint and this action be and the same are hereby dismissed. Costs are taxed against the plaintiff, for which, unless presently paid, execution may issue.

RIVES, Circuit Judge (dissenting).

Malone Freight Lines, Inc., brings this suit to set aside orders of Division 2 of the Interstate Commerce Commission of May 1, 1961 and August 14, 1961. In the first order, Division 2 denied Malone the right to reduce its trucking rates on floor coverings and related articles from numerous origins in Delaware, New Jersey, New York and Pennsylvania to destinations in Alabama, Arkansas, Georgia, Louisiana, Mississippi and Tennessee. By its order of August 14, 1961, the same Division 2 *"acting in an appellate capacity"* denied Malone's petition for rehearing or reconsideration.

At one time a federal district court would have had jurisdiction of a suit to enforce an order made by a Division of the Interstate Commerce Commission even though there had been no application for rehearing. As said by Mr. Justice Brandeis speaking for the Court in United States v. Abilene & Southern Ry. Co., 1924, 265 U.S. 274, 281, 282, 44 S.Ct. 565, 68 L.Ed. 1016:

"Division 4 consists of four members. There are eleven members on the full Commission. Under these circumstances, what is here called a rehearing resembles an appeal to another administrative tribunal. An application for a rehearing before the Commission would have been clearly appropriate. The objections to the validity of the order now urged are in part procedural. They include questions of joinder of parties, of the admissibility of evidence, and of failure to introduce formal evidence. Most of the objections do not appear to have been raised before the Division. If they had been, alleged errors might have been corrected by action of that body or by the full Commission. The order involved also a far-reaching question of administrative power and policy which, so far as appears, had never been passed upon by the full Commission, and was not discussed by

21. See Southern Motor Carriers-Agreement, 297 I.C.C. 603, 616.

these plaintiffs before the Division. In view of these facts, the trial court would have been justified in denying equitable relief until an application had been made to the full Commission, and redress had been denied by it. But, in the absence of a stay, the order of a division is operative; and the filing of an application for a rehearing does not relieve the carrier from the duty of observing an order. Despite the failure to apply for a rehearing, the court had jurisdiction to entertain this suit. Prendergast v. New York Telephone Co., 262 U.S. 43, 48, 49 [43 S.Ct. 466, 67 L. Ed. 853]. Compare Chicago Rys. Co. v. Illinois Commerce Commission, [7 Cir.] 277 Fed. 970, 974. Whether it should have denied relief until all possible administrative remedies had been exhausted was a matter which called for the exercise of its judicial discretion. We cannot say that, in denying the motion to dismiss, the discretion was abused."

That law was changed in 1940 by the addition to Section 17 of the Interstate Commerce Act of paragraph (9) [49 U.S.C.A. § 17(9), 54 Stat. 913], which precludes judicial review of the action of a division, an individual Commissioner or a board unless reconsideration of such action has been disposed of *"by the Commission or an appellate division."*

"(9) When an application for rehearing, reargument, or reconsideration of any decision, order, or requirement of a division, an individual Commissioner, or a board with respect to any matter assigned or referred to him or it shall have been made and shall have been denied, or after rehearing, reargument, or reconsideration otherwise disposed of, *by the Commission or an appellate division,* a suit to enforce, enjoin, suspend, or set aside such decision, order, or requirement, in whole or in part, may be brought in a court

of the United States under those provisions of law applicable in the case of suits to enforce, enjoin, suspend, or set aside orders of the Commission, *but not otherwise."* (Emphasis supplied.)

That such was the intention of the new paragraph is made clear by its legislative history, including the following statement in the Conference Report:

"4. A new paragraph (9) is included providing that orders of a division, an individual Commissioner, or a board shall be subject to judicial review as in the case of full Commission orders, after an application for rehearing has been made and acted upon. (Conf. Rep. dated April 26, 1940, House Report No. 2016 on S. 2009 at pp. 66–67)" [1]

With deference to my brothers, I think that statute is jurisdictional, and that a court lacks jurisdiction of an action to set aside an order of a division of the Interstate Commerce Commission in the absence of compliance with the statutory conditions precedent to judicial review of such an order. Holmes v. United States, S.D.N.Y., 1949, 89 F.Supp. 894, 896, aff'd per curiam, 339 U.S. 927, 70 S.Ct. 628, 94 L.Ed. 1348; Refrigerated Transport, Inc. v. United States, N.D.Tex., 1951, 101 F. Supp. 95, 96 (opinion by Judge Atwell with Judges Hutcheson and Davidson concurring); National Water Carriers Ass'n v. United States, S.D.N.Y., 1954, 126 F.Supp. 87, 90.

The general jurisdictional statute, 28 U.S.C.A. § 1336, begins with "Except as otherwise provided by Act of Congress * * *." Clearly, it affords no warrant for us to ignore the condition precedent to judicial review prescribed by 49 U.S.C.A. § 17(9).

The judicial review provided by Section 10 of the Administrative Procedure Act (5 U.S.C.A. § 1009) does not purport to broaden the right of review where "statutes preclude judicial review" or

---

1. The general jurisdictional statute, 28 U.S.C.A. § 1336, provides for review only of

"any order of the Interstate Commerce Commission."

where any form of reconsideration is "otherwise expressly required by statute." There can be, therefore, no reasonable contention that the jurisdiction of the court is broadened by the Administrative Procedure Act.

Jurisdiction is claimed in this case because in denying Malone's motion for reconsideration Division 2 stated that it was acting in an appellate capacity. It derived that authority from subsection 3 of Rule 1.101(a) of the General Rules of Practice of the Commission as amended February 1, 1961, which reads as follows:

"(3) Limitations on petitions for review of division decisions. Pursuant to authority granted in section 17(6) of the Interstate Commerce Act, the right to apply to the entire Commission for rehearing, reargument, or reconsideration of a decision, order, or requirement of a division of the Commission in any proceeding shall be limited and restricted to those proceedings in which prior to or at the time of issuance of a division's decision, the entire Commission, on its own motion, determines and announces that an issue of general transportation importance is involved. In proceedings in which no such announcement has been made, but in which a division reverses, changes, or modifies a prior decision by a hearing officer or where the initial decision is made by a division, a petition to the same division for rehearing, or reargument, or reconsideration of its decision will be permitted and will be considered and disposed of *by such division in an appellate capacity* and with administrative finality." (Emphasis supplied.)

The words "appeal" and "appellate", in their ordinary and usual significance, contemplate that a different tribunal made up of different members from the one that made the initial decision will review the decision. 3A Words and Phrases, perm. ed., 271, 365. That distinction was recognized by Mr. Justice Brandeis in the part of United States v. Abilene & Southern Ry. Co., supra, heretofore quoted, when he said: "Under these circumstances, what is here called a rehearing resembles an appeal to another administrative tribunal." 265 U.S. 281, 44 S.Ct. 565, 68 L.Ed. 1016.

"Appellate divisions" are referred to in several other places in Section 17 of the Act. Subdivision (1) provides that "the Commission may designate one or more of its divisions as appellate divisions." Subdivision (6) provides: "If the decision, order, or requirement was made by a division, an individual Commissioner, or a board, such application shall be considered and acted upon by the Commission or referred to *an appropriate appellate division* for consideration and action." (Emphasis supplied.) See 49 U.S.C.A. § 17(1), (6), (7), (8) and (9). Subdivisions (7), (8) and (9) also refer to review by the Commission or an "appellate division." Why should the restrictive term "appellate" be employed no less than six times if reconsideration by the same division wearing a different cap is disposition by an appellate division?

The legislative history indicates that when the Commission requested legislation authorizing it to provide for appellate divisions, it had in mind that there might be a five-man division specifically designated as an appellate division. See 49th Annual Report of the Interstate Commerce Commission 97 (1935); Hearings on Omnibus Transportation Legislation before the House Committee on Interstate and Foreign Commerce 1706 (1939).

In the Interstate Commerce Commission Report of March 20, 1939 to the House Committee, pp. 18–19; House Hearings on March 23, 1939, pp. 1574, 1587 on Omnibus Transportation Legislation, the Commission had stated:

"In our annual report for 1935, pages 96–97, also, we recommend, in the interest of saving time and promotion of greater efficiency, that we be authorized to create one or more appellate divisions within our number, to which we might assign appli-

cations for rehearings generally, or in particular cases or classes of cases, for final action. We then suggested the necessary textual amendments to sections 16a and 17 of the act to enable us to accomplish this purpose."

The question may be narrowed down to whether the Commission had authority to provide that a division could review an order previously entered by it "in an appellate capacity" and thereby furnish the necessary jurisdictional basis for judicial review. It is important to note that the rules of the Commission must "conform, as nearly as may be, to those in use in the courts of the United States." 49 U.S.C.A. § 17(3). When we consider court procedure, no one would argue that a reconsideration of a decision by the trial court would meet a requirement of its review by an appellate court. Of course, as Judge Swan has well said, "The Commission could not by its Rules extend this court's jurisdiction beyond the Congressional grant." Holmes v. United States, supra, 89 F.Supp. at 896.

In other respects, the authority of the Commission to adopt subdivision (3) of its Rule 1.101(a), as amended February 1, 1961, is not here in issue. The Commission claims to derive that authority in part from the following language in 49 U.S.C.A. § 17(6):

"* * * but the Commission may, from time to time, make or amend general rules or orders establishing limitations upon the right to apply for rehearing, reargument, or reconsideration of a decision, order, or requirement of the Commission or of a division so as to confine such right to proceedings, or classes of proceedings, involving issues of general transportation importance. Notwithstanding the foregoing provisions of this paragraph, any application for rehearing, reargument, or reconsideration of a matter assigned or referred to an individual Commissioner or a board, under the provisions of paragraph (2) of this section, if such application shall have been filed within twenty days after the recommended order in the proceeding shall have become the order of the Commission as provided in paragraph (5) of this section, and if such matter shall not have been reconsidered or reheard as provided in such paragraph, shall be referred to an appropriate appellate division of the Commission and such division shall reconsider the matter either upon the same record or after a further hearing." (Emphasis supplied.)

If we assume arguendo that orders of a division in proceedings not "involving issues of general transportation importance" need not be reviewed by the Commission or by an appropriate appellate division, it by no means follows that such orders must be reviewed by a court. Indeed, it would be anomalous to say that such orders are not of sufficient importance to require review by the Commission or an appropriate appellate division but are important enough to require judicial review.

Holmes v. United States, supra, 89 F. Supp. 894, 897; Refrigerated Transport, Inc. v. United States, supra, 101 F.Supp. 95, 96; National Water Carriers Ass'n v. United States, supra, all seem to me to hold that compliance with the requirements of 49 U.S.C.A. § 17(9) is jurisdictional. If that be true, then, for a district court to have jurisdiction after the denial of a rehearing by the same division which rendered the initial decision would mean to eliminate from that subsection (9) the phrase "by the Commission or an appellate division." That cannot be done if we are to observe the familiar canon that every word and phrase in a statute should be accorded some meaning, a rule especially applicable here in the light of the emphatic conclusion of subsection (9), "but not otherwise."

I would dismiss the complaint for lack of jurisdiction and therefore respectfully dissent.