A. B. & C. MOTOR TRANSPORTATION CO., Inc., Boston and Taunton Transportation Co., Hemingway Bros. Interstate Trucking Co., M & M Transportation Company, Plaintiffs,

v.

UNITED STATES of America, and Interstate Commerce Commission, Defendants.

Civ. A. No. 55–487–M.

United States District Court
D. Massachusetts.

Sept. 13, 1956.

**368**

James Julian Weinstein, Boston, Mass., for plaintiffs, Francis E. Barrett, Boston, Mass., of counsel.

James E. Kilday, E. Riggs McConnell, Attys., Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, H. Neil Garson, Asst. Gen. Counsel, Washington, D. C., for Interstate Commerce Commission.

W. Q. Keenan, New Haven, Conn., for New England Trunk Lines R. R.

Paul J. Goldstein, New Haven, Conn., J. A. Kline, Boston, Mass., for L. Nelson & Sons.

Before WOODBURY, Circuit Judge, and FORD and McCARTHY, District Judges, by designation of Chief Judge MAGRUDER pursuant to Title 28 U.S.C. § 2284.

WOODBURY, Circuit Judge.

This is a suit under Title 28 U.S.C. § 1336 to set aside and annul an order of the Interstate Commerce Commission granting a certificate of public convenience and necessity to the intervening defendant, The L. Nelson & Sons Transportation Company.

For a great many years The L. Nelson & Sons Transportation Company (Nelson or applicant hereinafter) has been in the business of a common carrier by motor vehicle transporting wool, wool waste, wool yarn, and the bags and spools used in the transportation of those commodities, over irregular routes between numerous points in the northeastern part of the United States scattered from the Philadelphia area to central New England. After the passage of the Motor Carrier Act, 1935, 49 Stat. 543, 49 U.S.C.A. § 301 et seq., the Commission granted it a certificate of public convenience and necessity covering its operations. On April 4, 1951, Nelson applied to the Commission for authority to broaden the scope of its operations as to commodities to cover transportation in interstate commerce over irregular routes in the area it was already serving of "textile mill products and supplies, except liquid commodities in bulk, in tank vehicles." The Commission, acting under § 210a, added to the Motor Carrier Act, 1935, supra, 52 Stat. 1238, as amended 54 Stat. 923, on May 1, 1951, gave Nelson temporary au-

thority limited to transporting for 180 days "synthetic fibers and yarns used in lieu of or with wool, wool waste, and wool yarns in the supply and manufacture of textile mill products." On October 25, 1951, just before that authority expired, the Commission extended its grant of temporary authority until it should make final determination of Nelson's application.

In due course a trial examiner for the Commission held hearings on Nelson's application at which numerous motor carriers, including the plaintiffs herein, and the New England and Trunk Line rail carriers to whom we previously denied intervention, appeared in opposition. In spite of their opposition, however, the trial examiner, on the supporting evidence of 12 shippers served by Nelson and the editor of a weekly trade publication, recommended that Nelson be granted additional authority to transport "synthetic and blended synthetic-and-wool fibers, yarn, and waste, and containers used in the transportation of those commodities" but over only part of the geographical area covered by its early operations and its original certificate. Only Nelson objected to the trial examiner's recommendation and it objected only to the territorial limitations imposed.

The Commission by its Division 5 handed down its report on October 19, 1953. In this report it said in reference to Nelson's application:

"Applicant now conducts extensive operations in the transportation of materials used in the textile industry. The sole purpose of the instant application is to broaden its authority, commoditywise, to include synthetic fibers and yarns and certain other commodities which, as a result of recent developments in the textile industry move in substantial volume between the mills in the area now served by it in the movement of wool and related items. In other words, applicant seeks here to keep pace with changes in the practices of the textile mills in its area of

service and to broaden its commodity authority to meet the changing needs of the textile industry."

The Commission found on a detailed analysis of the evidence in the record before it that there was indeed a definite trend in the textile industry, not only in the entire area served by Nelson but also generally, toward the use of synthetic materials in combination with and also in lieu of wool and other natural fibers. And it found that Nelson was "fit and able, financially and otherwise, properly to conduct" the additional operations it proposed. In these circumstances the Commission said that it was "convinced that applicant's commodity authority should be appropriately broadened," and that to confine the authority "to something less than applicant's entire area of service would be arbitrary and contrary to the facts and sound reasoning." Wherefore the Commission concluded "that the public convenience and necessity require a broadening of applicant's authority, commoditywise so as to enable it to meet the changed needs of the textile industry throughout its area of service." The real issue it said, was "solely one of commodity description."

On this issue the Commission discussed its decision in Ex Parte MC–10, Classification of Motor Carriers of Property, 2 M.C.C. 703 (1937) called the Classification proceeding, and its sequel, Ex Parte MC–45, Descriptions in Motor Carrier Certificates, 61 M.C.C. 209 (1952), called the Commodity Descriptions proceeding. As a result it concluded that administrative expedience required the cancellation of Nelson's old certificate, which Nelson was willing to do, and upon surrender of that certificate the issuance of a comprehensive new one authorizing Nelson to transport, in interstate or foreign commerce as a common carrier by motor vehicle over irregular routes, "materials used in the manufacture of cloth, waste materials resulting from the manufacture of cloth and supplies and materials used in connection with the transportation or proc-

essing of these commodities when moving to or from places of processing" throughout its entire area of service, and "empty containers used in transportation of the commodities named" over part of the area it served.

Various petitions for reopening, rehearing and reconsideration were filed with the Commission by a number of intervenors who opposed Nelson's application. No useful purpose would be served by setting each one out in detail. It will suffice to say that all but one were denied by Division 5 and on that one the Commission on March 11, 1955, affirmed its original decision but, in accordance with Nelson's application, added to its commodity description "except liquid commodities, in bulk, in tank vehicles." On April 27, 1955, the Commission issued an order granting Nelson a certificate of public convenience and necessity in accordance with the terms of its decision of October 19, 1953, as thus amended, and this is the order the plaintiffs seek to have set aside and annulled in the instant case. At the same time the Commission revoked Nelson's old certificate and also the temporary 180 day authority given to Nelson on May 1, 1951 and extended 177 days later.

The plaintiffs raise no issue with respect to the geographical scope of the authority given to Nelson. Nor do they question the revolution in the textile industry brought about by the wide use in recent years of synthetics either alone or in combination with natural fibers such as wool or cotton. Furthermore, we gather from their brief and argument that they would not complain if Nelson were given authority in accordance with the recommendation of the trial examiner to transport "synthetic and blended synthetic-and-wool fibers, yarn, and waste, and containers used in the transportation of those commodities." Their attack is directed primarily against the breadth of the authority given to Nelson in the certificate eventually issued to it by the Commission.

They say that there is no evidence in the record to support a grant of authority as broad as that given to Nelson. And they say that the Commission in granting such broad authority to Nelson acted in defiance of the requirements of due process of law in three respects: 1) by establishing a new classification or commodity description without giving adequate notice and opportunity to be heard; 2) by failing to refer the various petitions for rehearing to an appropriate appellate division of the Commission; and 3) by extending the temporary authority given to Nelson on May 1, 1951, beyond the 180 days permitted by statute. We shall consider these contentions in the order of their statement.

There is certainly abundant evidence of a rapidly increasing use in the textile industry of synthetics, either in combination with or in lieu of wool and indeed other natural fibers. And there is evidence that the mills Nelson has for years served with satisfaction are following the trend. Thus Nelson's service to its customers is sure to be seriously curtailed if not crippled unless it is permitted to broaden the scope of its authority enough to permit it at the very least to transport synthetics used in substitution for or in combination with wool. The plaintiffs must and do concede this much. Their complaint is that the authority given to Nelson is not specifically tied in with or keyed into the transportation of wool, but permits it to transport "cloth" generally, and associated items. Thus they say that the authority given to Nelson allows it to invade the cotton textile industry, for instance, whereas its past operations were limited to the woolen textile industry. And they say that there is no evidence whatever that the public convenience and necessity would be served by permitting it to serve any industry other than woolen textiles as that industry has developed in the past and may develop in the future. That is to say, the plaintiffs contend that on the record Nelson's authority ought to be limited to wool, its synthetic substitutes, and the two in combination, with, of course, incidental items.

. The contention overlooks two factors, one factual and the other legal. The evidence is that several of those Nelson has been serving in the past are not now using only wool alone or even wool in combination with some synthetic, but since about 1951, when Nelson applied for broader authority, have also been using synthetics alone or synthetics combined with non-wool fibers such as cotton or rayon, sometimes with wool also in the combination and sometimes not. Thus for Nelson to cover its "field of service" it must have authority broader than merely to cover transportation of synthetics alone or in combination with wool, and certainly the Commission is within its powers in giving Nelson authority to provide its customers with complete service.

Furthermore, the Commission has broad power under the Motor Carrier Act, 1935, to tailor commodity classifications to fit existing and reasonably foreseeable needs and conveniences even to the extent of authorizing services more extensive than asked for by a carrier-applicant. Chicago, St. P., M. & O. Ry. Co. v. United States, 1944, 322 U.S. 1, 64 S.Ct. 842, 88 L.Ed. 1093. The scope of the certificate which should be granted in any case entails not only a weighing of evidence by the Commission but also the exercise by it of an expert judgment on the intricacies of the transportation problems involved. United States v. Carolina Freight Carriers Corp., 1942, 315 U.S. 475, 489, 62 S.Ct. 722, 86 L.Ed. 971. In this case we can say as this court said in General Transportation Co. v. United States, D.C.1946, 65 F.Supp. 981, 984, that it does not appear that the Commission overstepped any limit expressly placed by Congress upon its discretion, and that its conclusion has ample support in the evidence— indeed upon analysis the plaintiffs' argument is only that the Commission erroneously weighed conflicting evidence. And this said there is no occasion for further discussion, for on well established principles too frequently reiterated to warrant citation of authorities the judicial function is exhausted.

The plaintiffs' constitutional arguments warrant only brief consideration.

Their first contention is that the Commission in this case established a broad new commodity classification applicable to the entire motor carrier industry and hence its action is constitutionally invalid under the due process clause for failure to give the whole industry notice and an opportunity to be heard. The argument misconceives the Commission's action. What it actually did was to consider the evidence in this specific case and then to refer for guidance to its decisions in the Classification and the Commodity Descriptions cases, which were proceedings conducted upon notice to the entire motor carrier industry wherein the Commission established the general principle that "special commodity" carriers, like Nelson, ought on request to be granted certificates broad enough to permit them when necessary to service particular industries rather than merely to transport specific commodities. The Commission then found the so-called "field of service" principle applicable to Nelson's predicament caused by the change in the textile industry. Consequently it applied the principle by granting Nelson authority to transport "materials used in the manufacture of cloth * * *" etc.

The authority given is no broader than the authority Nelson applied for. And, as the Commission pointed out, a grant of broad authority was administratively expedient in view of the state of rapid flux in the textile industry caused by the discovery and expanding use of synthetics. For otherwise the Commission would be faced with the necessity of continuously redefining commodity descriptions in order to assure that the respective needs of carriers and shippers would be satisfied. We are unable to see any constitutional infirmity in the action taken by the Commission.

The plaintiffs' next constitutional argument is that they were denied due process of law because the Commission

referred their applications for rehearing, reargument and reconsideration to a division of the Commission, one member of which had been a member of the division which decided the case in the first instance. They say also that for the same reason the division to which their applications were referred was not an "appropriate" one, and so the reference violated § 17(6) of Part I of the Interstate Commerce Act, 54 Stat. 915, 49 U.S.C.A. § 17(6) which, referring to applications of the sort, provides in part:

"Any such application, if the decision, order, or requirement was made by the Commission, shall be considered and acted upon by the Commission. If the decision, order, or requirement was made by a division, an individual Commissioner, or a board, such application shall be considered and acted upon by the Commission or referred to an appropriate appellate division for consideration and action."

And they say in addition at the least the Commission's action constituted an abuse of discretion.

The arguments are quite without substance. Motions or petitions for rehearing or reconsideration have time out of mind been addressed without thought of constitutional infirmity to the court or judge which, or who, decided the case in the first instance. We see no reason why applications of the same kind to a Commission cannot be similarly addressed, and *a fortiori*, addressed to a division one member of which had been a member of the division which had decided the case in the first instance.

The plaintiffs' third constitutional argument, that "there was a denial of due process of law by the Commission in extending the temporary authority of the applicant beyond one hundred and eighty days," is also without merit. The extension of the temporary authority given to Nelson having expired months ago the question of the legality of the extension has become moot.

A judgment will be entered dismissing the complaint.