**TRANSAMERICAN FREIGHT LINES, INC., Plaintiff,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

**and**

**Consolidated Truck Lines, Limited, et al., Intervening Defendants.**

**Civ. A. No. 2968.**

United States District Court
D. Delaware.

Aug. 31, 1966.

George Tyler Coulson, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Paul Coyle, Washington, D. C., Howell Ellis, Indianapolis, Ind., for plaintiff.

John H. D. Wigger, Dept. of Justice, Donald F. Turner, Asst. Atty. Gen., Robert W. Ginnane, Gen. Counsel, Thomas H. Ploss, I. C. C., Washington, D. C., Alexander Greenfeld, U. S. Atty., Wilmington, Del., for defendants.

John Van Brunt, Jr., Killoran & Van Brunt, Wilmington, Del., Rex Eames, Sullivan, Eames, Moody & Petrillo, Detroit, Mich., for intervening defendants.

## OPINION

Before BIGGS, Circuit Judge, and WRIGHT and STEEL, District Judges.

STEEL, District Judge:

This action was brought under 28 U.S. C. §§ 1336, 1398, 2284, 2321 to 2325, and 5 U.S.C. §§ 1004(d) and 1009, to vacate and set aside as unlawful three orders of the Interstate Commerce Commission.

Plaintiff is a Delaware corporation having its principal business office in Detroit, Michigan. It is a common carrier by motor vehicle transporting general commodities, with certain exceptions, in interstate and foreign commerce, primarily over regular routes, under the authority of Certificates of Public Convenience and Necessity No. MC–10761, and sub-numbers thereunder, issued by the Commission. Pursuant to its operating authority, plaintiff conducts operations in the District of Columbia and in twenty-nine states: Arkansas, Colorado, Connecticut, Delaware, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont, Virginia, West Virginia, and Wisconsin. In its authorized territory plaintiff serves virtually all of the larger points as well as most of the smaller cities and towns. The operations of plaintiff include service to Wilmington and other points in the State of Delaware.

The defendants are the United States and the Interstate Commerce Commission. The intervening eleven defendants are general commodity motor carriers, operating under Certificates of Public Convenience and Necessity issued by the Commission, and, like the original defendants, they seek to sustain the orders which plaintiff attacks.

On October 22, 1963 plaintiff filed a petition with the Commission seeking an interpretation, in the nature of a declaratory order, of plaintiff's certificate number MC–10761 (Sub-No. 57) (hereinafter "Sub-No. 57"), and related operating authorities. More specifically plaintiff sought to obtain a ruling from the Commission that under its existing certificates it possessed all necessary authority to transport shipments of commodities generally, with the usual exceptions, moving in foreign commerce between the points in Massachusetts, Rhode Island and Connecticut included in its certificate Sub-No. 57, and points in the Province of Ontario, Canada, by crossing

the international boundary line at or near Buffalo, New York.

Plaintiff's contention was rejected by an opinion and order dated May 6, 1964 by the Operating Rights Review Board Number 3 (hereinafter "Operating Board"), to which the Commission had referred plaintiff's petition.

On June 12, 1964 plaintiff filed a petition for reconsideration of the report and order of the Operating Board. Jurisdiction of this petition was taken by Division 1 of the Commission, acting as an Appellate Division (hereinafter "Appellate Division"). By order dated December 24, 1964, the Appellate Division denied the plaintiff's petition for reconsideration stating that the findings of the Operating Board were in accordance with the evidence and the applicable law. Under the Commission's rules, the decision of the Appellate Division was administratively final in the absence of a finding by the entire Commission "upon its own motion" that the proceeding involved an issue of "general transportation importance." If such a finding were made, the decision would be subject to review by the entire Commission. See Rule 101(a) (4)–(5), 49 C.F.R. § 1.101(a) (4)–(5). In an effort to obtain such a review, plaintiff petitioned the Commission to make a general transportation importance finding. On January 26, 1965 the Commission entered an order denying the petition, and stated that in its judgment no issue of general transportation importance was involved.

The present action was begun on February 9, 1965, and challenges the validity of the orders of the Operating Board, the Appellate Division, and the Commission. The case was heard upon the verified Complaint of Transamerican, the unverified answer of defendants (adopted by eleven intervening defendants), and a certified copy of the record before the Commission. At the hearing plaintiff offered and we received in evidence, subject to a later determination of the motion of defendants to strike, certain diagramatic charts and the record before the Commission in Transamerican

Freight Lines, Inc.—Purchase—Allen Motor Lines, 65 M.C.C. 163 (1955), the proceeding which gave rise to the issuance of Sub-No. 57.

After the merits of the cause had been briefed and argued, we raised two questions *sua sponte* both of which related to the finding by the Commission that no issue of general transportation importance was involved. The first concerned the qualification of Commissioners Hutchinson and Brown to participate in determining the point since they constituted the Appellate Division which had decided the appeal from the Operating Board's decision. The second related to the failure of the Commission to make any finding, state any conclusion, or assign any reason for its decision. At our request the parties have filed briefs addressed to both questions.

Upon reflection, we have concluded that both questions are academic. This is so for two reasons:

In the first place, plaintiff had no right to petition the Commission to make a finding that the proceeding involved an issue of general transportation importance. There is no statutory basis for the filing of such a petition. Such authority as exists is found in Rule 101 (a) (4), 49 C.F.R. § 1.101(a) (4). This Rule authorizes the filing of a petition for a finding of general transportation importance only if the proceeding "has involved the taking of evidence at oral hearing or by modified procedure". In the instant case no oral evidence was taken and modified procedure was not followed. No order directing modified procedure as required by Rule 45(b), 49 C.F.R. § 1.45(b) was entered.

In the second place, under the Interstate Commerce Act the Commission has no power to review an appellate division decision, even if the proceeding does involve an issue of general transportation importance. This is made clear by section 17 of the Interstate Commerce Act, 49 U.S.C. § 17, entitled "Commission Procedure; Delegation of Duty; Rehearings."

By section 17(1) the Commission is authorized by order to divide its members into as many divisions (each to consist of not less than three members) as it deems necessary, to be designated division 1, division 2, etc., or by a term descriptive of the function assigned to it by the Commission. One or more of the divisions may be designated as an "appellate division." Section 17(2) empowers the Commmission by order to assign any matter, subject to exceptions presently irrelevant, to "any division, to an individual Commissioner, or to a board to be composed of three or more eligible employees of the Commission". Section 17 (4) provides that either of these three entities—"[a] division, an individual Commissioner, or a board"—may hear and determine any business assigned to it, and that the decision, except as otherwise provided in section 17, shall have the same force and effect as if made by the Commission.

■ Subparagraphs (5), (6), (7) and (9) of section 17 are particularly relevant. These subparagraphs make it clear that when Congress used the word "division" it did not mean to include an "appellate division," and that when it meant to refer to an "appellate division" it used that precise term.[1]

Subparagraph (5) provides that after an individual Commissioner or board renders a decision in a matter assigned to it involving the taking of testimony at a public hearing, the "Commission or a duly designated division * * * shall" in specified circumstances reconsider the matter. At this point no reference is made to reconsideration by an appellate division. This is particularly significant when read in conjunction with subparagraph (6). Subparagraph (6) provides that if the matter reviewable by the "Commission or a duly designated division" under subparagraph (5) has not been reconsidered by either of them, then any application for reconsideration "shall

be * * * referred to an appropriate appellate division."

Furthermore, subparagraph (6) specifies the entities from whose decisions applications for rehearing, reargument or reconsideration (hereinafter "reconsideration") may be filed, and designates the entities to consider and act upon such applications. It states broadly that after a decision shall have been rendered by "[t]he Commission, a division, or individual Commissioner, or a board," any party may apply for reconsideration of the decision, subject to such statutorily authorized limitations as may be established by the Commission. In this general statement of the decisions reviewable there is no provision made for the filing of an application to reconsider a decision of an "appellate division." Subparagraph (6) then specifies with particularity the entities which are to consider and act upon the applications. If the decision is made by the Commission, the application must be considered and acted upon by the Commission. If the decision is rendered by "a division, an individual Commissioner, or a board," the application may be considered and acted upon either by (1) the Commission or (2) by an "appropriate appellate division" to which the Commission refers it. Thus, in specifying the entities whose decisions are subject to reconsideration, the statute for a second time omits any reference to an "appellate division."

Section 17(6) authorizes the Commission to adopt rules establishing limitations upon the right to apply for reconsideration of a decision "of the Commission or of a division so as to confine such rights to proceedings, or classes of proceedings, involving issues of general transportation importance." But, here again, for a third time in the same subparagraph, no provision is made for the reconsideration by the Commission of a decision of an "appellate division."

Subparagraph (7) of section 17 follows the same language pattern as does sub-

---

1. The Commission has been equally exact in its use of the two terms. See Rule 101., particularly, subparagraphs (a) (2)–

(4) and (g), 49 C.F.R. § 1.101(a) (2)– (4) and (g).

paragraph (6). Thus it provides that if upon a reconsideration of a decision of "a division, an individual Commissioner, or board" (note, no mention of an "appellate division"), it appears that the decision is unjust or unwarranted, "the Commission or appellate division" may reverse, change or modify the same accordingly.[2]

■ Subparagraph (9) of section 17 fortifies the conclusion that once an application for reconsideration has been denied by an "appellate division," the Commission cannot exercise any right of review. It provides that when an application for reconsideration of a decision of a "division, individual Commissioner, or board" shall have been denied or otherwise disposed of by the "Commission or an appellate division," a suit to enforce, enjoin, suspend or set aside the decision may be brought in the District Court. Once more, no reference is made to an application for the reconsideration of a decision of an "appellate division."

■ The purpose of subparagraph (9) is to require a party aggrieved by administrative action to exhaust his remedy before filing an action in the Courts. Holmes v. United States, 89 F.Supp. 894, 896–897 (S.D.N.Y.1949), aff'd per curiam, 339 U.S. 927, 70 S.Ct. 628, 94 L.Ed. 1348 (1950).[3] In Refrigerated Transport, Inc. v. United States, 101 F.Supp. 95, 96 (N.D.Tex.1951), the court, in speaking of section 17(9) said:

"To put it more bluntly, the Commerce Act does not give an alleged aggrieved party the right to sue the United States

until such administrative remedy, as is afforded by the Act, shall have been exhausted."

Subparagraph (9) not only requires the exhaustion of all administrative remedies, but it specifies the point at which all administrative remedies have been exhausted. When the decision complained of is rendered by a "division, individual Commissioner, or board," the administrative remedy is exhausted when an application for reconsideration had been denied or otherwise disposed of by the "Commission or an appellate division," depending upon whether the Commission has retained the application or has referred it to an appellate division. The denial of the application by either terminates all of a litigant's rights before the Commission. Thereafter his only remedy lies in the courts.

In Malone Freight Lines, Inc. v. United States, 204 F.Supp. 745, 747 (N.D. Ala.1962), after a division had taken action adverse to the plaintiff, and the same division, acting as an appellate division, had denied the plaintiff's petition for reconsideration, the court said that the plaintiff "has done everything within its power to exhaust its administrative remedy [p. 748]," and that "the administrative process had come to an end [p. 750]". Although the question of the reviewability of an appellate division's decision was not an issue, the decision tacitly recognizes its finality and that no further action within the Commission is authorized. This conclusion is likewise implicit in the decisions of A. B. &

---

2. Subparagraph (7) continues:
   "Any decision, order, or requirement made after rehearing, reargument, or reconsideration, reversing, changing, or modifying the original determination shall be subject to the same provisions with respect to rehearing, reargument, or reconsideration as an original order."
   Since there is no mention of the entity to which any such petition for reconsideration shall be addressed, it is reasonable to suppose that Congress intended that it should be filed with either the Commission or the appellate division

which reversed, changed or modified the decision under review. Rule 101(g) supports this interpretation, 49 C.F.R. § 1.101(g).

3. The statement in *Holmes*, supra 89 F. Supp. at 896, that section 17(9) requires that reconsideration by the full Commission be sought prior to judicial review of an order of a division is obviously erroneous. Section 17(9) in terms authorizes judicial action after the denial or other disposition by either the Commission *or* an appellate division of an application for reconsideration of a division decision.

C. Motor Transportation Co. v. United States, 151 F.Supp. 367 (D.Mass.1956), and Studna v. United States, 225 F.Supp. 973 (W.D.Mo.1964), wherein suits in the District Courts were entertained despite the fact that plaintiffs sought to take no action before the Commission after a petition for reconsideration was acted upon by an appellate division.

■ The legislative history of section 17 confirms the fact that Congress never intended that the Commission should review a matter once it was decided by an appellate division to which the Commission had referred it.

Section 17 in its present form, subject to an unimportant exception,[4] became a part of the Interstate Commerce Act by an amendment which became effective on September 18, 1940.[5] Prior to that time, as today, the Commission was empowered to assign any work, subject to an exception not presently relevant, to a division comprised of not less than three Commission members, to an individual Commissioner, or to a board composed of employees of the Commission. Section 17 (2), (3), and (6); 24 Stat. 386 (1887), as amended, 40 Stat. 270–271 (1917), 41 Stat. 492–493 (1920), 47 Stat. 1368–1369 (1933). A party dissatisfied with a decision of any of these three entities had an absolute right to apply to the Commission to reconsider the decision. Sections 16a and 17(4); 24 Stat. 386 (1887), as amended, 34 Stat. 584, 592–593 (1906), 47 Stat. 1368–1369 (1933). Appellate divisions were not provided for.

The need for relieving the Commission of the burden of passing upon applications to reconsider many decisions of minor importance was recognized in the annual report for 1935 which the Commission submitted to Congress. Forty-Ninth Annual Report of the Interstate Commerce Commission, pp. 95–97 (1935). That report proposed amendments to sections 16a, 17(4) and 17(6) of the Act,

supra, which radically affected the review procedures and for the first time provided for appellate divisions. More specifically, the proposed amendments provided that when a decision was rendered by a division which had heard a case in the first instance, an application for reconsideration thereof might be heard and determined either by the Commission, or by an appellate division, to which the Commission referred it. An application for reconsideration of a decision of an individual Commissioner or board could be filed with a division and an application for reconsideration of the division's decision could be filed with an appellate division. In all instances when an application to reconsider the decision of either a division, individual Commissioner, or board was filed with and acted upon by an appellate division, its decision was final and no further relief within the Commission was possible.

The report of the Commission explained these amendments as follows:

"The foregoing amendments would authorize the Commission to create an appellate division or divisions of not less than five Commissioners, to which the Commission could refer applications for rehearings either generally or in particular cases or classes of cases. The decision of the appellate division in such cases would be final the same as if it were by the entire Commission. This would relieve the Commission of the necessity of having 11 Commissioners consider many cases which are not of such character or importance as to warrant such procedure.

It is not believed that any party would suffer injury or any cause would be prejudiced by being finally disposed of by an appellate division of five members."

Forty-Ninth Annual Report of the Interstate Commerce Commission, p. 97 (1935).

---

4. Subparagraph (5) was amended on September 14, 1961. Pub.L. 84–247, 75 Stat. 517–518 (1961).

5. See C. 722, Tit. I, § 12; 54 Stat. 894, 913–916 (1940).

On April 11, 1938 President Roosevelt sent to Congress a report made by the so-called Committee of Three, composed of Commissioners, which he had appointed to make recommendations for changes in the Interstate Commerce Act. The concurring report of Commissioner Splawn, Chairman of the Commission, stated:

"At present the Commission carries on most of its work through its divisions. Appeals lie from the divisions to the entire Commission. Each of the 11 commissioners must pass upon every petition for reconsideration of the action of a division.

Paragraph (4) of section 17 should be amended so as to authorize a division to make a final order subject to review by the courts. With such an amendment, the Commission could then organize into appropriate divisions, each of which could finally pass upon matters submitted, subject always to review by the courts."

Message from the President of the United States Transmitting His Recommendations for Means of Immediate Relief for Railroads, H.R.Doc.583, 75th Cong., 3d. Sess., p. 49 (1938). The main report of the Committee of Three did not discuss the need for changes in Commission procedure.

On February 25, 1939 Representative Lea, Chairman of the Committee on Interstate and Foreign Commerce of the House, wrote to the Commission and requested that it submit a report on a number of proposals which had been made for amending the Act. On March 20, 1939, Commissioner Eastman, Chairman of the Legislative Committee of the Commission, wrote Representative Lea and said among other things:

"(3) the task of the Commission would be made easier and it could transact business more expeditiously, if it were authorized:

(a) To delegate work, business, and functions without restriction to individual Commissioners or board of employees, subject to opportunity for review by a division of the Commission, and under certain conditions by the Commission itself. * * *

(b) To establish by general rules limitations on the right of parties to seek review by the Commission of the action of a division or individual commissioner or board of employees, such limitations to confine the opportunity to proceedings of certain classes or descriptions involving issues deemed by the Commission to be of general transportation importance. In our annual report for 1935, pages 96–97, also, we recommend in the interest of saving time and promotion of greater efficiency, that we be authorized to create one or more appellate divisions within our number, to which we might assign applications for rehearings generally, or in particular cases or classes of cases, for final action. We then suggest the necessary textual amendments to sections 16a and 17 of the act to enable us to accomplish this purpose. If adopted, these two proposals would * * * materially assist in the effective conduct of our work."

Letter from the Legislative Committee of the Interstate Commerce Commission to Representative Lea of the House Committee on Interstate Commerce. H.R. Rep.No.1217, 76th Cong., 1st Sess., pp. 18–19 (1939).

S. 2009 which culminated in the amendment of September 18, 1940, was introduced in the Senate on March 30, 1939. While there were a number of hearings upon this bill, and it was altered several times before it was finally enacted, the law in its final form clearly embodies the idea which the Commission had urged from the time of its 1935 report—that there should be divisions designated by the Commission as appellate divisions and that the decisions of appellate divisions upon matters referred to them by the Commission should be administratively final.[6]

---

6. The changes that occurred in S.2009 between its first introduction in the Senate

in March, 1939 and its passage in the fall of 1940, reveal the strong influence

■ The administrative finality of a decision of an appellate division which was reflected in the 1940 amendment of the Act was acquiesced in for twenty years by the Commission. With the passage of time, however, the Commission apparently had doubts as to the wisdom of the law insofar as it foreclosed Commission review of a decision of an appellate division, and in early 1961 promulgated Rule 101(a) (4), 49 C.F.R. § 1.101 (a) (4). This provides:

"In any proceeding which has involved the taking of evidence at oral hearing or by modified procedure in which the Commission has not noted the presence of an issue of general transportation importance, any party may, within 15 days after the service of a final decision, order or requirement of a division or appellate division, as to which the filing of a petition for rehearing, reargument, or reconsideration is not permitted, file a petition requesting the Commission to find on its own motion that the proceeding is one involving an issue of general transportation importance. Any petition seeking such a finding shall not be considered an application for rehearing, reargument, or reconsideration within the meaning of section 17 of the act and shall not exceed 3 pages. No reply thereto may be filed and the ruling thereon will be final."

The succeeding paragraphs in Rule 101 provide procedure by which the Commission, if it finds that the proceedings is one involving an issue of general transportation importance, may review the appellate division decision.

The rule seemingly recognizes that an application for reconsideration by the Commission of a decision of an appellate division is not authorized by the statute, for it expressly states that a petition requesting a finding that an issue of general transportation importance is involved shall not be considered an application for reconsideration.

Nevertheless, such a finding, the rule states, may be made by the Commission "on its own motion." The rule would make the statutory finality of an appellate division decision subject to a condition subsequent—Commission review and the consequent possibility of a reversal or modification of the decision. Under the Rule, once the Commission determines that an issue of general transportation importance is involved and decides to review the decision, all semblance of its finality is lost,[7] and the purpose of the statute is defeated.[8] Since the rule is inconsistent with the statute, it can be given no effect.

The statute confers upon the Commission the power to review a decision of an individual Commissioner, a division, or a board, if the Commission considers the

---

exerted by the Commission's legislative proposals relating to a reform in the reconsideration processes.

The original version of S.2009, as proposed by a Presidential Committee of Six, dealing with the reconsideration processes made no material changes in the prior law. Thus, it not only failed to make provision for appellate divisions, but also orders of employee committees (boards), individual Commissioner and divisions were subject, as a matter of right, to reconsideration by the entire Commission. Confidential Committee Prints of S.2009, Numbers 1–3, Senate Committee on Interstate Commerce, 76th Cong., 1st Sess., §§ 23(7)–(10), 31(6) (March, 1939). Significantly, this version was proposed before the 1939 Commission Legislative proposals were submit-

ted to Congress. Letter from the Legislative Committee of the Interstate Commerce Commission to Representative Lea of the House Committee on Interstate and Foreign Commerce, H.R.Rep. No. 1217, 76th Cong., 1st Sess. pp. 18–19 (1939).

7. Compare Outland v. CAB, 109 U.S.App. D.C. 90, 284 F.2d 224, 226(1960).

8. Rule 101(a) (3), 49 C.F.R. § 1.101(a) (3), quite properly restricts the right to apply to the entire Commission for reconsideration of a decision of a "division" (not "appellate division") to proceedings in which the entire Commission on its own motion determines and announces that an issue of general transportation importance is involved. Section 17(6) of the Act clearly authorizes this limitation.

matter involved to be of sufficient importance to warrant Commission review. The Commission may accomplish this simply by reviewing the decision itself instead of referring it to an appellate division. The Commission has the choice in the first instance whether it or an appellate division will act upon an application to reconsider a decision. But once the Commission has referred the matter to an appellate division and the latter has spoken, under the statute that is the end of the matter so far as the Commission is concerned. Any review of the decision thereafter can only be had by a Court.

It may be that in the public interest and in furtherance of the sound administration of the Act decisions of appellate divisions involving issues of general transportation importance should be reviewable in the discretion of the Commission. If so, the way for the Commission to accomplish this is not by the adoption of a rule which has the effect of destroying the administrative finality which Congress has accorded to appellate division decisions, but by obtaining an amendment to the Act.

This brings us to the merits of the review.

■ Plaintiff attacks the decision of the Operating Board by asserting that it was arrived at by the Operating Board without affording plaintiff an opportunity to file a statement of facts and arguments as contemplated by Commission Rule 49(a), 49 C.F.R. § 1.49(a). Whatever validity this objection might otherwise have has now been waived. In the petition which plaintiff filed with the Commission seeking a reconsideration of the order of the Board, it stated:

"As far as we are concerned, the filing of this petition cures the situation and we have set out herein the facts, the arguments, and past precedent-making decisions of the Commission and of the Courts of the United States upon which we rely and the whole matter is now, for the first time, as we view it, properly before the Commission."

Petition of Transamerican Freight Lines, Inc. for Reconsideration of the Report and Order of Operating Rights Review Board No. 3, p. 13 (June 12, 1964).

Plaintiff also contends that, procedure aside, the order of the Operating Board is void and unlawful because contrary to long established precedents of the Commission as approved by the Courts.

■■ In considering the Board's decision, certain well-settled principles must be borne in mind. The interpretation which the Commission places upon a certificate of authority must be upheld by the Court unless it is clearly erroneous. Andrew G. Nelson, Inc. v. United States, 355 U.S. 544, 558, 78 S.Ct. 496, 2 L.Ed.2d 484, rehearing denied, 356 U.S. 934, 78 S.Ct. 770, 2 L.Ed.2d 763 (1958). The function of the Court is not to determine *de novo* what is a proper construction of a certificate. The Court is bound by the interpretation of the Commission unless it is capricious, arbitrary, constitutes an abuse of discretion, or does violence to some established principle of law. Malone Freight Lines, Inc. v. United States, 107 F.Supp. 946, 949 (N.D.Ala.1952), aff'd per curiam, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712, rehearing denied, 345 U.S. 914, 73 S.Ct. 643, 97 L.Ed. 1348 (1953). Cases to the same effect are legion. These are the principles which must guide us in our review.

Plaintiff acquired the authority added by Sub-No. 57 in 1955 in Transamerican Freight Lines, Inc.-Purchase-Allen Motor Lines, 65 M.C.C. 163. It was at that time that the restriction which is our concern was inserted in the certificate by the Commission. During the time that the authority was held by Allen, it authorized operations only between the points and over the routes in Connecticut, Massachusetts and Rhode Island described in the authority. Thus, the Sub-No. 57 certificate in and of itself gives plaintiff no right of carriage between the New England points specified in it and Buffalo, or to Buffalo and beyond into Canada. If plaintiff has any such right it must be by combining the Sub-No. 57

certificate with other authorities which it owns. This combining of two or more authorities is sometimes referred to as "tacking." Both routes from New England into Canada by way of Buffalo which plaintiff claims—denominated by plaintiff as (1) the "direct route" via Springfield, Massachusetts, and Syracuse, New York, [9] and (2) the "tacking route" via Pittsburgh, Pennsylvania [10]—rest upon the tacking principle.

■ It is permissible for a motor carrier to tack separate grants of authority if there is a point of service common to both authorities unless there is a specific restriction against tacking in the operating certificate. Clapps, Extension —Alternate Route, 77 M.C.C. 683, 687 (Div. 1, 1958), aff'd on reconsideration by the entire Commission, 79 M.C.C. 370 (1959); Petroleum Products, O'Boyle Tank Lines, 61 M.C.C. 48, 49 (Div. 3, 1962); Direct Transport Co. of Kentucky, Inc., Extension, 68 M.C.C. 151, 156 (Div. 1, 1956).

■ Here the critical question is whether the restriction in Sub-No. 57 prevents the "tacking" which is essential to give plaintiff a route to Canada through Buffalo from the Sub-No. 57 New England points. The restriction reads:

"Service authorized herein is restricted to transportation of shipments between authorized points on the routes herein, on the one hand, and, on the other, Pittsburgh, Pa., and points west of the Pennsylvania-Ohio State line presently

authorized to be served by the above-named carrier."

Plaintiff's basic argument is that the restriction has no application to foreign commerce, and hence cannot serve to preclude plaintiff from tacking its other authorities to the Sub-No. 57 certificate so as to utilize Buffalo as a through point for international hauls. Plaintiff's premise that the restriction is without application to foreign commerce is fallacious.

Sub-No. 57 expressly provides that the transportation service to be performed by plaintiff "in interstate or foreign commerce" shall be as specified in the certificate. After listing the various points in Connecticut, Rhode Island and Massachusetts over which transportation service is authorized, the restriction appears. In the context of the restriction the authority granted with respect to "foreign commerce" has particular relevance. The restriction makes it clear that plaintiff may transport commodities from the Sub-No. 57 New England points to Pittsburgh and to points west of the Ohio-Pennsylvania line which plaintiff was authorized to serve under its other authorities. Under one or more of the authorities which plaintiff owned when Sub-No. 57 was issued, it had the right to haul shipments from Pittsburgh to Detroit and thence into Canada. By tacking Sub-No. 57 with such authorities plaintiff had the right to transport commodities between the New England points specified in Sub-No. 57 and Canada by way of Pittsburgh and Detroit. This, of course, was in addition to its right to

---

9. Sub-No. 57 grants plaintiff the right to perform transportation services between specified points in Connecticut, Rhode Island, and Massachusetts including Springfield, Massachusetts. Certificate Sub-No. 88 grants it similar rights between Springfield and Syracuse, New York. Certificate Sub-No. 1 grants a like right between Syracuse and Buffalo. In view of the disposition which we make of the case it is not necessary to consider what effect is to be given to the restriction contained in Sub-No. 88 relating to operations between Springfield and Syracuse, or to the fact that the certificate states

that Springfield-Syracuse is "an alternative route for operating convenience only."

10. This route is based upon plaintiff's asserted right to combine with the Sub-No. 57 authority a number of other authorities which it possesses for transportation services between (1) Hartford, Connecticut and New York City, (2) New York and Pittsburgh, Pennsylvania, (3) Pittsburgh and Meadville, Pennsylvania, (4) Meadville and Erie, Pennsylvania, and (5) Erie and Buffalo, New York. The various certificates applicable to these routes are specified in Brief for the Plaintiff, Appendix M, pp. 44a–48a.

perform interstate transportation services under Sub-No. 57 with or without tacking. Thus, the authority granted by Sub-No. 57 to transport in "interstate or foreign commerce" was meaningful in both its interstate and foreign commerce aspect. It was therefore reasonable for the Operating Board to construe the restrictions as applicable to both types of commerce. Indeed Sub-No. 57 by its plain terms required this interpretation.

Plaintiff makes the argument, by pointing to a number of certificates issued to other motor carriers, that when the Commission intended to exclude transportation in foreign commerce from an authority, it has said so in express terms.[11] Here a restriction against transportation in foreign commerce would have been inappropriate, for such a restriction would have foreclosed plaintiff from transporting commodities from the Sub-No. 57 New England points to Canada via Pittsburgh and Detroit. This would have been contrary to the Commission's purpose.

Plaintiff argues that Sub-No. 57 contains no restriction against tacking which serves to prevent it from having access to Canada through Buffalo from the Sub-No. 57 New England points. The service authorized by Sub-No. 57 is restricted to the transportation of shipments between (1) authorized points in New England designated in the certificate, and (2) Pittsburgh and points west of the Pennsylvania-Ohio line then authorized to be served by plaintiff. By this restriction the Commission has manifested a clear intention to exclude from the authority granted by Sub-No. 57 the transportation of shipments between other points, including Buffalo. Any other view would make the restriction meaningless.

Plaintiff argues that inasmuch as the Operating Board found that the restriction in Sub-No. 57 was free from ambiguity, its reference to the Allen Purchase opinion violated a well settled principle of law stated in Sims Motor Transport Lines, Inc., Revocation of Certificate, 66 M.C.C. 533 (Div. 1, 1956) and other cases. They enunciate the proposition that if a motor carrier authority is not patently indefinite or ambiguous, it must be construed according to its terms regardless of what may have been intended, and that no consideration may properly be given to the record upon which the authority was granted or other extraneous matters.

The censure which plaintiff directs at the Operating Board is unwarranted. The Allen Purchase opinion was not the foundation of the Board's opinion. The Operating Board found within the four corners of the restriction itself that commerce to Canada through Buffalo was within the restriction. What was said in the Allen Purchase opinion, to be sure, was seized upon by the Board to buttress its interpretation of the restriction but the interpretation basically was independently arrived at from the language of the restriction itself. Reference to the Allen Purchase opinion cannot render the Operating Board's opinion abortive, when, without reference to the Allen opinion, it was perfectly sound.[12]

Here the restriction on its face so clearly prohibits Sub-No. 57 from being tacked so as to give the plaintiff access to Canada through Buffalo, that interpretations placed upon other restrictions in

---

11. Illustrative is the certificate of Warren Transport, Inc., No. MC 114–211 (Sub-No. 34) which contains the following restriction:
   "RESTRICTION: The authority granted herein is restricted against operations in foreign commerce."

12. It may be doubted, whether the principle relied upon by plaintiff forecloses reference to an earlier opinion by the Commission. However, since the opinion of the Operating Board is supportable without regard to the Allen opinion, we do not pass upon the point. There is no occasion for us to consider the record in the Allen case (PX 2), since Sub-No. 57 is clear on its face. See T. I. McCormack Trucking Co., Inc.—Investigation, 89 M. C.C. 5 (1961). Defendant's motion to strike it will be granted.

other cases cited by defendants can have no relevance.

We are satisfied that the interpretation which the Operating Board placed upon the restriction was not clearly erroneous; indeed we are satisfied that it was patently right. Accordingly, it is unnecessary for us to consider the attack which plaintiff makes upon the affirming decision of the Appellate Division.

Defendant's motion to strike the diagramatic charts (PX–1) is denied. They are helpful in reading the decisions to which they relate.