**TRANSIT HOMES, INC., Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**

**Morgan Drive Away, Inc. and National Trailer Convoy, Inc., Intervenors.**

**Civ. A. No. 68–415.**

United States District Court
D. South Carolina,
Greenville Division.

April 4, 1969.

Wesley M. Walker, J. D. Todd, Jr., Harvey G. Sanders, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S. C., L. Agnew Myers, Jr., Washington, D. C., Mitchell King, Jr., Greenville, S. C., for plaintiff.

Edwin M. Zimmerman, Asst. Atty. Gen., Gregory B. Hovendon, John H. D. Wigger, Attys., Department of Justice, Washington, D. C., Klyde Robinson, U. S. Atty., Columbia, S. C., for defendant United States of America.

Robert W. Ginnane, General Counsel, John E. Faulk and Steven Kazan, Washington, D. C., for defendant Interstate Commerce Commission.

William J. Lippman, Galland, Kharasch, Calkins & Lippman, Washington, D. C., Leonard A. Jaskiewicz, Grove, Jaskiewicz & Gilliam, Washington, D. C.,

O. G. Calhoun, Jr., Greenville, S. C., J. William Cain, Jr., Washington, D. C., for intervenors.

Before WINTER, Circuit Judge, and SIMONS and RUSSELL, District Judges.

WINTER, Circuit Judge:

This is a suit to annul, set aside and enjoin an order of the Interstate Commerce Commission, which granted authority to Morgan Drive Away, Inc. ("Morgan") and National Trailer Convoy, Inc. ("National") to transport so-called "double wide" mobile houses as an adjunct to their existing authority to transport "single wide" mobile homes. Plaintiff, Transit Homes, Inc. ("Transit"), together with others, appeared before the Commission in opposition to the grant of the applications.[1] When the authority was granted (in Docket Nos. MC-103993 (Sub-No. 243) and MC-106398 (Sub-No. 327)), the present suit was instituted and Morgan and National were permitted to intervene. Jurisdiction exists under 28 U.S.C.A. § 1336; venue under 28 U.S.C.A. § 1398 (plaintiff's principal office is located in Greenville, South Carolina); and the case is an appropriate one for a three-judge court, 28 U.S.C.A. § 2325.

Transit and Morgan are, and for many years have been, possessors of certificates of public convenience and necessity authorizing them as common carriers by motor vehicle to transport trailers and certain like vehicles. So far as pertinent, Transit's authority is to transport trailers designed to be drawn by passenger automobiles, in initial movements, in truckaway service, from specified origins to points in designated states, and it may also transport trailers, except freight carrying vehicles, in secondary movements, in towaway service, between points in the United States except those in Indiana. National has authority to transport trailers designated to be drawn by passenger automobiles, in initial movements, in truckaway service over irregular routes from numerous points of orgin to all or designated portions of the United States, and in secondary movements, in truckaway service, between points in the United States except Alaska and Hawaii, and between Alaska and points in the United States except Hawaii.[2] Morgan's authority is substantially the same as that of National.

About 1947 trailers used as residences (mobile homes) usually did not exceed 35 feet in length and 8 feet in width. Trailers of this size were transported by the use of passenger automobiles or one-half or three-quarter ton trucks. In subsequent years, trailer length was gradually increased to 50 feet, but the width remained the same. About 1955 manufacturers began producing units 10 feet wide and up to 60 feet long. Later, 12 foot wide units, having a length of 65 to 70 feet, were developed. About 1959 or 1960 manufacturers began to market what the industry terms "double wide" units. Generally a "double wide" comprises two 10 or 12 foot wide structures of given lengths, which are fastened together at destination so as to make a building 20 or 24 feet wide. Most manufacturers of double wide structures also make conventional or "single wide" mobile homes, but a few manufacturers of prefabricated buildings have also begun to manufacture double wide structures.

Prior to the decision in National Trailer Convoy, Inc. v. United States, 382 U.S. 40, 86 S.Ct. 161, 15 L.Ed.2d 33 (1965), affirming per curiam, 240 F.

---

1. One of the other protestants was Whitehouse Trucking, Inc., over which National has now obtained control so that Whitehouse has become an affiliate of National.

2. National also has authority to transport house trailers, cabin trailers, bunga-low trailers, trailers containing special equipment, portable houses, mobile home trailers, campers and camp coaches, campers and camp coaches designed for installation in pickup trucks and trailers other than those designed to be drawn by passenger automobiles.

Supp. 286 (N.D.Okl.1965), motor carriers serving the mobile home industry had operated on the assumption that their authority to transport single wide mobile homes extended to the transportation of double wides. But when the Supreme Court in that case affirmed a Commission determination to the contrary, Morgan and National sought an extension of their commodity authority to include double wides. *No extension of the territorial scope of their operations was requested,* only the inclusion of an additional commodity which they were authorized to carry. Transit made similar applications but, apparently because it concluded to file applications to transport portable buildings, rather than to seek an extension of its existing authority, its applications were not acted on at the time that those of Morgan and National were granted.[3] The record does not show what has transpired since March 21, 1967, with regard to those of Transit's applications made on the theory stated.

Although National and Morgan presented much evidence to establish that the public convenience and necessity would be served by the granting of their applications, the trial examiner, whose report and recommendations became the decision of the Commission except in minor respects, found a lack of proof of "shipper support in connection with initial movements from many of the origins they seek to serve." Nevertheless, the trial examiner concluded that the present and future public convenience and necessity required the grant of applications essentially as a result of applying the "field of service doctrine" hereafter discussed, because, as the examiner expressed it, "they [double wides] are of kin to single unit mobile homes," which National and Morgan were authorized to transport. It is this ground of decision which is principally attacked in the present proceeding. Additionally, Transit contends that the Commission's order

should be set aside because the certificates awarded National and *Morgan* are duplicating geographically and they are fatally ambiguous in their designation of the area to be served. We consider these contentions seriatim.

–I–

The "field of service" doctrine represents a long-established policy whereby the Commission has allowed specialized carriers to keep apace of technological changes and new product developments in their specialized service industry. It had its genesis in the proceeding entitled Descriptions In Motor Carrier Certificates, 61 M.C.C. 209 (1952), wherein the Commission permitted carriers whose services were geared to a particular industry to keep pace, from the standpoint of commodity descriptions, with the technological changes occurring within the industry.

L. Nelson & Sons Transp. Co. Ext.-Synthetics, 62 M.C.C. 271 (1953), aff'd, A. B. & C. Motor Transportation Co. v. United States, 151 F.Supp. 367 (D.Mass. 1956), is the leading case on the subject. There, a carrier which had authority to transport wool, wool waste, wool yarn and the bags and spools to carry these commodities, applied for authority generally to carry textile mill products and supplies, with certain exceptions. The Commission, finding that the carrier confined its activities to the textile industry and finding, further, that there was a definite trend in the textile industry toward the use of synthetic materials in combination with, and in lieu of, wool and other natural fibers, granted additional authority to transport "synthetic-and-wool fibers, yarn, and waste, and containers used in the transportation of those commodities." The Commission, in justifying its order, stated:

"It is clear from the foregoing that, in order to continue the spirit of the

---

3. In a related application, Transit Homes, Inc., v. Extension-Michigan, 107 M.C.C. 445 (1968), Transit successfully advanced the field of service doctrine to gain authority to carry double wides.

*Commodity Descriptions* Report, we must in determining questions of commodity descriptions, in appropriate cases, consider the 'field of service' of the carrier whenever it offers a specialized service and the needs of the industry served by it. The issue here, as noted, is solely one of commodity description. Applicant's operations are confined to supplying the needs of the textile industry and it seeks here merely to change its commodity description in keeping with undisputed and striking changes in the industry. No basically new service is proposed, no new field of carrier operations is to be invaded, and as seen, no change is involved which will materially affect the competitive situation of existing carriers. In the circumstances, we are convinced that applicant's commodity authority should be appropriately broadened." 62 M.C.C., at 281.

The Commission's order, as well as its rationale therefor, was, as previously indicated, upheld by the district court. To like effect, see, Dixie Ohio Express, Inc. v. United States, 263 F.Supp. 993, 1004–1005 (N.D.Ohio 1966), where the Commission was admonished to consider the evidence offered by the carrier to show the history of the industry and the nature of its service to it. U. S. A. C. Transport, Inc. v. United States, 235 F.Supp. 689 (D.Del.1964), aff'd, 380 U.S. 450, 85 S.Ct. 1103, 14 L.Ed.2d 151 (1965) (per curiam), recognized that the field of service doctrine is appropriate under certain circumstances. The Commission has applied the field of service doctrine to a wide variety of commodity descriptions, viz.: Pennsylvania-Ohio Express, Inc. Extension-Refractory Products, 96 M.C.C. 499 (1964), from "clay products" to "refractories;" U. S. A. C. Transport, Inc. Extension-Missiles, 103 M.C.C. 23 (1966), from "aircraft and aircraft parts" to "aerospace craft and aerospace parts," and Denny Motor Freight, Inc. Extension-Tractors from Louisville, Ky., 103 M.C.C. 626 (1967), from "farm" to "agricultural" machinery to include non-farm tractors. See also, Transit Homes, Inc. Extension-Michigan, 107 M.C.C. 445 (1968), in which plaintiff has now acquired authority to transport double wides to the same extent that it had authority to transport mobile homes; Fox-Smythe Transp. Co., Extension-Oklahoma, 106 M.C.C. 1 (1967).

■ Accepting the correctness of the trial examiner's findings, we think the instant case an appropriate one to apply the field of service doctrine.[4] *Inter alia,* the examiner found that National and Morgan confine their common carrier activities to the limited commodities we have described, that double wides are manufactured principally by the manufacturers of single wides which National and Morgan were serving, that double wides are sold by dealers who sell single wides, that they are placed in mobile home parks that serve both single and double wides, that the frame and undercarriages are the same for both, that both normally utilize a hitch-ball latch for connecting to the hitch-ball on the towing vehicle, that both are equipped by manufacturers with household furniture and kitchen applicances and fixtures and lavatory fixtures, that both are used for living quarters, as well as other industrial and professional uses, that undercarriages are normally left on each of the double wide units, and overall that manufacturers, dealers and mobile home park operators treat double wide

4. In oral argument, Transit challenged the correctness of the trial examiner's findings generally. At the time no record had been certified by the Commission. Although we directed that there be greater specificity in post-argument briefs if such a challenge were seriously made, Transit, after we denied its motion to require the Commission to certify the record at its own cost, has brought the record to us and has filed two briefs. But in neither does it tell us wherein the trial examiner's findings lack adequate support. We are advised, and there is no denial, that Transit complimented the trial examiner in a pleading before the Commission for the accuracy and completeness of his findings.

units in the same manner as a single unit mobile home or trailer. We agree, therefore, that by their applications National and Morgan "merely seek to continue serving an industry in connection with products which have evolved from the single unit mobile home." No distinction that we perceive is to be made between wool commodities and the other commodities to which the doctrine has been applied and trailers or mobile homes. Accordingly, we conclude that the Commission correctly invoked the field of service doctrine.

Transit argues vigorously that improperly the Commission relied upon the field of service doctrine in lieu of requiring a showing of public convenience and necessity. Transit stresses, in this regard, that the trial examiner candidly stated that National and Morgan, although having made an impressive showing as to public need for the proposed service, had no shipper support in connection with initial movements from many of the origins which they seek to serve.

■ We are not persuaded. The field of service doctrine is but one aspect of an overall determination of public convenience and necessity, the standard which the Commission is bound to meet. The weight to be given this factor, as well as all others which complete the proof of compliance with tne standard, rests largely with the Commission. Only where the Commission acts arbitrarily, capriciously or beyond its delegated authority, will its determination of the weight to be given each component of the proof be set aside. Interstate Commerce Commission v. Parker, 326 U.S. 60, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945); Indianhead Truck Line, Inc. v. United States, 253 F.Supp. 186 (D.Minn. 1966). That National and Morgan were unable, or failed, to present proof of shipper support for each origin that they sought to serve does not indicate that

the Commission's overall finding that the grant of their applications was in the public convenience and necessity is vulnerable. Atlanta-New Orleans Motor Freight Co., Inc. v. United States, 197 F.Supp. 364 (N.D.Ga.1961).

■ Aside from such considerations, we are constrained to remark that when a carrier does not seek extension of territorial authority and seeks only additional authority to carry a commodity which has evolved from that which it was previously authorized to carry, there having been theretofore a finding that public convenience and necessity are served by its existing authority, logically, the quantum of proof for the new authority should be less than if the carrier were seeking a totally new service in a new territory. Certainly, we cannot say that when the issue is one solely of commodity description, some relaxation of the strictness of proof by the Commission is arbitrary, unreasonable or capricious. Thus, we find no merit in Transit's first group of related contentions.

- II -

The claim of duplicating authority is raised by Transit late in the proceedings. Neither National nor Morgan sought duplicating rights. The trial examiner and the Commission did not intend to grant duplicating rights.[5] Although Transit filed exceptions to the trial examiner's report, and when they were overruled, a petition for reconsideration which was denied, Transit did not make any claim of duplication at any of the various stages of adjudication before the Commission. Only obliquely in its initial brief and in oral argument before us was the claim of duplication asserted. This was followed by an amendment to the complaint to raise the issue for the first time on the pleadings. We, over objection, permitted the amendment because we thought such liberality consistent with the scope and spirit of

---

5. In regard to both applications, the trial examiner, whose report was adopted by the Commission, said: "The authority granted herein to the extent that it may duplicate any authority now held by applicant shall not be construed as conferring more than a single operating right."

Rule 15, Fed.R. Civ.Proc. We specified that by permitting the amendment we reached no conclusion on the merits of the claims so presented.

■ With the issue raised on the pleadings, we, nevertheless, conclude that we cannot decide it on the merits because of Transit's failure to have raised it before the Commission. Section 17(9) of the Interstate Commerce Act, 49 U.S.C.A. § 17(9), requires the exhaustion of administrative remedies and in particular the denial of a petition for reconsideration before a suit to enforce, enjoin, suspend or set aside an order may be brought in a court of the United States. Holmes v. United States, 89 F.Supp. 894 (S.D.N.Y.1949), aff'd per curiam, 339 U.S. 927, 70 S.Ct. 628, 94 L.Ed. 1348 (1950). See also, § 10(c) of the Administrative Procedure Act, 5 U.S.C.A. § 704; Federal Power Commission v. Colorado Interstate Gas Co., 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583 (1955).

■ Even aside from § 17(9) of the Act, the rule is well-established that a party may not raise on judicial review an alleged error in the process of administrative adjudication, not raised before the administrative body, which was correctible by the administrative agency if otherwise meritorious. United States v. L. A. Tucker Truck Lines, 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952); [6] United States v. Hancock Truck Lines, Inc., 324 U.S. 774, 65 S.Ct. 1003, 89 L.Ed. 1357 (1945); Watkins Motor Lines v. United States, 252 F.Supp. 1017 (M.D.Ga.1966). Thus, Transit's failure to raise any question of duplication at any stage of the administrative proceedings and particularly in its petition for reconsideration addressed to the Commission precludes

Transit's asserting this as a ground of invalidity of the order before us.

In another aspect of its duplication argument, Transit raises a question of possible duplication of operating rights between National and its affiliate Whitehouse. We do not consider this question properly before us. It should have been litigated in the proceeding whereby National and Whitehouse were permitted to come under common control, namely, National Trailer Convoy, Inc. v. Control-Whitehouse Trucking, Inc., Docket No. MC–F–9507. It is not without significance, however, that the Commission's order served December 15, 1966, in that case was conditioned upon the operating rights of Whitehouse's being subject to such terms, conditions or limitations in the future as the Commission may find necessary to be consistent with the national transportation policy within the meaning of § 210 of the Act.[7]

-III-

The trial examiner recommended the grant of certificates to Morgan and National to carry double wides "in initial movements, in truckaway services" and "in secondary movements, in truckaway service." The Commission, however, in adopting the examiner's recommended report modified the order, purportedly in compliance with Descriptions in Motor Carrier Certificates, 61 M.C.C. 209 (1952), and instead of utilizing the terms "initial" and "secondary" the Commission employed the terms "from origins which are points of manufacture" and "other than from origins which are points of manufacture." Unlike the purported issue of duplication, Transit clearly raised the question of the propriety of the modification in its peti-

6. "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." 344 U.S., at 37, 73 S.Ct. at 69.

7. Section 210 of the Act, 49 U.S.C.A. § 310, prohibits duplicating certificates and permits unless "for good cause shown, the Commission shall find, or shall have found" that duplicating certificates and permits may be held "consistently with the public interest and with the national transportation policy declared in this Act * * *."

tion for reconsideration before the Commission.

Transit asserts that the modification injected an element of vagueness and ambiguity which should require that the Commission's order be vacated and the matter remanded to it. It does not claim that any ambiguity will impair the ability of the certificated carriers to determine if they are restricted to initial movements of double wides when the origin thereof is a point of manufacture, but it raises questions of how the language chosen by the Commission should be construed if it is assumed that a new manufacturer establishes a plant for the production and sale of double wides at a point from which the certificated carriers are authorized to engage in initial movements, and what should happen to the authority to engage in initial movements from the point from which the moving manufacturer originated and ceased doing business. We see no fatal ambiguity in the Commission's descriptions in the certificates.

The description employed by the Commission was in accord with the pronouncements in Fox-Smythe Transp. Co. Extension-Oklahoma, 106 M.C.C. 1 (1967), where the Commission attempted to make more clear certain commodity descriptions used in motor carrier operating authorities. In Fox-Smythe (106 M.C.C. 43), the Commission observed that double wides should be described as "buildings, in sections mounted on wheeled under-carriages with hitch-ball connector," the precise description utilized by the Commission in the instant case. The Commission discussed the use of the terms "initial" and "secondary" in that case, but did so solely in regard to motor vehicles moving in truckaway or driveaway service. The inference is clear that when presented with the opportunity in the instant case the Commission exercised its expertise in prescribing an appropriate description to be utilized in certificates authorizing the movement of mobile homes.

We do not perceive that the language employed by the Commission is ambig-

uous. Whether a given origin is a point of manufacture is a question of fact. If a double wide is manufactured at a given point named in National's and Morgan's authority they may perform the transportation. On traffic moving, for example, to buyers from dealers situated at origins "other than origins which are points of manufacture" the same is true. Thus, if a dealer has sold a double wide to a customer, and the customer or dealer desires the services of National or Morgan, then it may perform the service if it possesses authority from points "other than origins which are points of manufacture."

Of course, manufacturers who desire carriage may move their place of manufacture from time to time. Such a move should raise no greater problem under the language selected by the Commission for inclusion in the certificates than under the descriptions "initial" or "secondary." There is nothing startling about the possibility that National or Morgan or Transit may gain traffic as new plants are built in their authorized territories or lose traffic as existing plants relocate.

Thus, we conclude that Transit has not arguably demonstrated that the certificates are vague and ambiguous. Moreover, if in fact, questions of how the language is to be construed arise, National, Morgan or Transit, if they in good faith believe that they are authorized to carry a specific commodity may carry it until advised to the contrary. If they have doubt they may apply to the Commission for an opinion. U. S. A. C. Transport, Inc. v. United States, *supra,* 235 F.Supp. at 694.

-IV-

For the reasons expressed, we conclude that the amended complaint should be dismissed, with costs. The restraining order heretofore issued should be rescinded. Counsel may agree upon an appropriate form of order.